# Alabama Great Southern Railway Co. v. Godfrey.

*Action for Damages for Falling into Culvert.*

(Decided Feb. 13, 1908.  Rehearing denied July 3, 1908.
47 South. 185.)

1. *Negligence; Care of Premises; Trespasses.*—An owner of premises owes no duty to trespassers to make his premises safe.

2. *Railroads; Persons on Track; Trespassers.*—Under ordinary circumstances the mere acquiescence by a railroad in the use of its right of way by the public does not amount to permission and those who go upon the way are trespassers.

3. *Carriers; Passengers; Injuries; Pathway; Complaint.*—A complaint alleging that the plaintiff, a passenger alighted at the depot in the night time, and while passing from the depot along a much traveled pathway, he fell into a ditch and was injured, and that the pathway was on the carrier's premises and was habitually used with its knowledge and acquiescence by its passengers in leaving its trains and depot, by invitation of the carrier, at and before the time of the injury, and that the carrier negligently allowed the pathway to remain unsafe, whereby plaintiff was injured, states a good cause of action of the case of a passenger leaving a train by a route which he as well as passengers generally were invited by the carrier to use.

4. *Appeal and Error; Ruling on Pleadings; Harmless Error.*—Allegations in a complaint, which the court refuses to strike, which are substantially repeated elsewhere in the complaint. and are essential to a good cause of action, if error to refuse to strike, is harmless.

[Alabama Great Southern Railway Co.' v. Godfrey.]

,5. *Railroads; Depot Grounds; Use by Passenger; Agent; Authority.* —Though it may be within the authority of the station agent to inform passengers alighting from the train of a safe way of egress from the depot, or approaches thereto reasonably nearby, in the absence of a showing to the contrary, it is not within the scope of such agent's authority to suggest to or invite passengers leaving trains at the station to go to any particular hotel, unless owned by the carrier, or to direct them to follow any particular route to reach such hotel unless such route has been otherwise sanctioned.

6. *Same.*—A statement by the station agent of a carrier to a passenger alighting from one of its trains that a hotel man was there with a light, and that if he would hurry he could catch up with him, was the mere individual suggestion of the agent for which the carrier was not liable, unless the route suggested and taken was within the depot grounds or approaches thereto, or was a passageway which the carrier had expressly or impliedly invited the public to use as a means of ingress or egress to and from its depot and platform.

7. *Same; Care Required.*—A railroad company owes a duty of keeping in safe condition all portions of its depot, platform and approaches thereto to which the public will naturally resort, and all portions of its station ground reasonably near to such platform where passengers will naturally go; but a culvert on a main line of the railroad 235 yards from the depot is not an approach to the depot platform or a portion of the station grounds reasonably near to the platform as falls within the rule above stated.

8. *Same; Injury to Persons on Track; Right to go on Track.*—The right of way of a railroad is its exclusive property, and ordinarly mere acquiescence in the use thereof by the public does not confer on the public the right to use it, nor create any obligation to lookout for persons using it, other than the general duty to keep a lookout for obstructions on the track.

9. *Same; Maintenance of Exit.*—Where a railroad furnishes open, free and safe exit from its depot and platform to a highway, mere acquiescence by it and the use of its track by passengers at a place 235 yards distant from the depot does not render it liable to such passengers beyond its liability to mere licensees.

10. *Same.*—When a carrier furnishes safe and sufficient egress from its depot grounds it complies with its obligations in that respect to its passengers. It is under no obligations to maintain a safe passageway for its passengers to or from any particular hotel except under exceptional circumstances, such as eating houses where trains are stopped for passengers to get meals, or hotels in which the carrier is interested, or hotel situated within or adjoining depots or depot grounds.

11. *Same; Evidence.*—The evidence in this case stated and examined and held to show that the use of a pathway along the railroad right of way by former passengers was not at the invitation of the company, and that persons using it could not recover for injury sustained in consequence of a defective condition of the pathway.

12. *Negligence; Trespassers; Care of Premises.*—The rule that the owner of land upon which the public is expressly or impliedly invited to enter must keep the same free from pitfalls, does not apply to strictly private places or to places where persons are neither expected nor expressly nor impliedly invited to go.

13. *Same; Use of Another's Premises; Care Required.*—One acting on invitation in going on the premises of another has the right to presume, from that fact, that the premises are kept reasonably safe, and he is not required to be careful to keep a lookout for pitfalls; but one acting without invitation or without knowledge of the invitation is negligent, under ordinary circumstances, if he presumes safety in the premises of the nature and condition of which he is ignorant, especially at night.

14. *Same; Invitation.*—Within the rule that an owner of land who holds out an invitation for others to go thereon, must keep his premises in a safe condition, the word invitation imports that the person entering on the premises does not act merely for his own convenience and pleasure, and from motives to which no act of the owner contribtued; it imports rather than he entered upon the premises because he believed that they were intended to be used by visitors, and that such use was not only acquiesced in by the owner, but that it was in accordance with the intention and design for which the place was adapted, and prepared, or allowed to be so used.

15. *Same.*—Mere passive acquiescence by an owner in a use of his premises by another involves no liability to him but he assumes an obligation that they are safe and suitable for use where he directly or by invitation induces others to enter on his premises, and is liable for a breach of this obligation to a person injured thereby.

APPEAL from Sumter Circuit Court.

Heard before Hon. S'. H. SPROTT.

Action by Ernest B. Godfrey, as a passenger against the Alabama Great Southern Railroad Company for personal injuries alleged to have been caused by the unsafe condition of a pass way along defendant's right of way along which he was travelling in the night time, after having been discharged as a passenger at defendant's depot. There was judgment for plaintiff and defendant appeals. Reversed and remanded.

A. G. & E. D. SMITH, for appellant. The court should have given the affirmative charge in this case for appellant.—*M. & C. R. R. Co. v. Lyon,* 62 Ala. 74; *A. G. S. R. R. Co. v. Fulton,* 39 So. Rep. 282; *M. & C. R. R. Co. v. Womack,* 84 Ala. 150; *L. & N. R. R. Co. v. Sides,* 129 Ala. 399; *Andrews v. B. M. R. R. Co.* 99 Ala. 440; *So. Ry. Co. v. Mizell,* 132 Ala. 540; *L. & N. R. R. Co. v. Hairston,* 97 Ala. 351; *Montgomery v. A. G. S.*

*R. R. Co.* 97 Ala. 305; *Verner v. A. G. S. R. R. Co.* 103 Ala. 574; *S. & W. R. R. Co. v. Meadows,* 95 Ala. 141; *L. & N. R. R. Co. v. Mitchell,* 134 Ala. 261; *A. G. S. R. R. Co. v. Linn,* 103 Ala. 134; *Ensley Ry. Co. v. Chewing,* 93 Ala. 30; *Carrington v. L. & N. R. R. Co.* 88 Ala. 477; *Warden v. L. & N. R. R. Co.,* 94 Ala. 277; *So. Ry. Co. v. Peters,* 135 Ala. 533; *Thompson v. R. R. Co.* 77 Ala. 456.

BOWMAN, HARSH & BEDDOW, for appellant. There were two questions involved in this case. 1st, was plaintiff a trespasser or bare licensee? 2nd, was he guilty as a matter of law of proximate contributory negligence. On the first proposition, we cite the following:—*Del. Lack. & Western R. R. v. Trautwein,* 7 L. R. A. 435—& brief; *Johns v. Charlotte C. & A. R. Co.* 20 L. R. A. 520—& notes; *Skottowe v. Oregon Short Line, etc.,* 16 L. R. A. 593—and notes; *Moreland v. Boston & P. R. Co.* 141 Mass. 31; *Cent. R. R. Co. v. Thompson,* 76 Ga. 770; *L. N. A. & C. R. R. Co. v. Lucas,* 6 L. R. A. 193; *Lemon v. Ry. Co.* 136 Mich. 647; *Watson v. Oxanna Land Co., et al.* 92 Ala. 320; *Watson v. E. T. V. & G. R. R. Co.* 94 Ala. 635; *Mont. & Eufaula R. R. Co. v. Thompson,* 77 Ala. 456; *A. G. S. R. R. Co. v. Arnold,* 80 Ala. 600; 3 Thompson on Neg. Sec. 2678 & 2682; 3 Thompson on Neg. Sec. 2704; Moore on Carriers, p. 556, Sec. 10; *Schlessinger v. Ry. Co.* 98 N. Y. Supp. 840; 2 Hutchinson on Carriers (3 ed.), Sec. 937.

On the second proposition we cite the following.— *A. G. S. R. R. Co. v. Arnold,* 84 Ala. 159; 3 Hutchinson on Carriers (3rd Ed.), Sec. 1420; *A. G. S. R. R. Co. v. Fulton,* 144 Ala. 332; 5 Thompson on Neg. Secs. 6263 6264-5; *Elyton Land Co. v. Mingea,* 89 Ala. 521; *Robinson v. R. R. Co.* 48 Cal. 421.

HARALSON, J.—The trial in the court below was had upon the first and fourth counts of the complaint as amended, and the case as stated by these counts was substantially as follows:

Plaintiff had been carried as a passenger on one of defendant's trains to Epes, Alabama, where he alighted in the night time, and while passing from the depot along a much-traveled pathway leading therefrom, and while near to the depot, he fell from said pathway into a ditch and was thereby seriously injured; that said pathway where plaintiff fell, was on defendant's premises and was habitually used, with defendant's knowledge and acquiescence, by defendant's passengers, in leaving its depot or trains at said Epes, at and before the time of plaintiff's alleged injury, by the invitation of the defendant. The fourth count contains the additional averment that the pathway led to a hotel, nearby the depot, to which plaintiff was going. The negligence averred in the first count is as follows; "And defendant negligently caused or allowed said pathway or road to be or remain unsafe for passengers using the same as aforesaid in this, that the same was not properly or sufficiently lighted or otherwise properly and sufficiently safe-guarded." The negligence as alleged in the fourth count was, that the defendant with knowledge of the use of the pathway as aforesaid, and with knowledge of its danger, "negligently allowed plaintiff to pass along said pathway or road over said ditch, gully or viaduct, when the same was not properly lighted or otherwise safeguarded, without proper warning or notice of the danger thereof." Defendant filed a motion to strike those portions of the complaint which averred in substance the habitual use of the pathway by defendant's passengers, in leaving the depot, with defendant's acquiescence. The motion was overruled and this ruling assigned as error.

The same grounds of demurrer were interposed to each of these counts, and were in substance, that each of said counts showed that the plaintiff was a trespasser,

or a mere licensee, upon the defendant's right of way; that no duty was shown to rest upon the defendant to light or safeguard the place where the plaintiff fell, and that said place was not shown to have been on the depot premises of the defendant and that there was no averment of willful or wanton injury. The overruling of these demurrers by the court is also assigned as error.

It is insisted in argument by the appellant, that the plaintiff was a trespasser or a mere licensee under the facts stated in the first and fourth counts, on which the case was tried. In support of this contention, as well as in support of the motion to strike portions of these counts, appellant cites the case of *M. & C. R. R. Co. v. Womack,* 84 Ala. 149, 4 South. 618, and other cases of a similar nature. The opinion in that case states: "He was clearly a trespasser upon the right-of-way of the defendant. Any person who enters and walks at places where the public have no right, *unless by the invitation or license of the company,* is a trespasser, and assumes the peril of the position in which he has voluntarily placed himself." (Italics ours.) The doctrine laid down in the above case, that the owner owes no duty to a *trespasser* to make his premises safe, and that ordinarily the mere acquiescence in the use of the right-of-way by a railroad company does not amount to permission, is well settled by numerous decisions of this court; but they have no application to the case stated in the complaint here in question, which specifically avers that this usage was by "invitation of the defendant." Different rules apply in cases where the parties injured are present on the premises by *invitation* or license of the owner, express or implied.—*Montgomery & Eufaula R. R. Co. v. Thompson,* 77 Ala. 456, 54 Amer. Rep. 721, and other cases hereinafter cited.

[Alabama Great Southern Railway Co. v. Godfrey.]

A fair construction of the amended complaint makes a case of a passenger leaving a train and depot by a route which he, as well as passengers in general, was *invited* to use by the railroad company, which route was negligently left unsafe and unguarded, by reason of which he was injured. It follows that, so far as the pleading discloses, he was not a trespasser or licensee, and that there was no error in overruling the demurrers. As to the motion to strike, it was at most directed at mere surplusage, the matter thus attacked being substantially repeated elsewhere in the amended counts in connection with the averment, that such habitual usage of the dangerous pathway by defendant's passengers was not only with its acquiescence, but by its invitation; and without proof of such invitation, under the averments of the complaint the plaintiff would clearly not be entitled to recover. Hence if there was any error in overruling the motion to strike, it was error without injury.

As the second count was charged out of the case and the third count went out on demurrer sustained, their consideration is not necessary here. As stated the case was tried on the first and fourth counts.

The defendant pleaded the general issue and filed special pleas setting up contributory negligence.

The facts as shown without conflict in this case were substantially as follows: The plaintiff was a passenger on defendant's train from Birmingham to Epes, where he arrived on a very dark and rainy night. The train stopped at the depot, plaintiff left the train, and went into the depot to leave a satchel, expecting to spend the night in McGee's Hotel at Epes, where most travelers usually stopped. There was another hotel close to the depot, but few traveling men went there. McGee's hotel was situated something more than 235

[Alabama Great Southern Railway Co. v. Godfrey.]

yards *northward* from the depot, near the railroad on the east side. Plaintiff had stopped at McGee's hotel once before, when he came in a buggy and went to the hotel by the dirt road. Plaintiff had never gone up the railroad to the hotel, and up to the time of the injury did not know of the conditions existing on that way. The dirt road, of which plaintiff had knowledge, crossed the railroad near the depot on the *south side* and ran around northward in front of the stores at Epes and over a bridge with banisters spanning a waterway up to McGee's hotel. This same waterway also passed under the railroad through an uncovered culvert, about eighteen feet deep and cut through the rock, at a point on the railroad, 235 yards north from the depot. When plaintiff went into the depot to put up his satchel, one Sims, acting as defendant's depot agent, said to him that the hotel man was there with a light and that if he would hurry he could catch up with him. Plaintiff immediately started out in the darkness to follow the man with the light which he saw going up the track toward the hotel; that as plaintiff left the depot a man, shown to have been defendant's night operator, hollowed to him, "Look out for the hole up there." Plaintiff kept on up the track, and about the time the man with the light turned up the embankment toward the hotel, plaintiff fell through into the culvert and was very seriously injured; one leg had to be amputated and the other was stiffened.

It was further shown that near the hotel there were some steps leading from a path from the hotel down to the railroad track which was, at that point, in a shallow cut; that defendant's passengers in going to and from the hotel and the depot usually, and had for a number of years, used a well-beaten path up the main line of defendant's railroad track from the depot and

across the culvert and up these steps to the hotel, especially when the roads were muddy,—being the same route pursued by the man with the light. It was not shown whether this custom was confined to daytime only, or extended to night and day both. The railroad company had never objected to this use of its track, though it had been so used for a number of years. The evidence did not show who put up the steps from the cut to the path leading to the hotel, but it appeared that they had been removed several years before by the section foreman and the railroad company's supervisor had them put back; that the supervisor's duty was to keep up the railroad tracks and see that they were in good condition. It was fifty yards further from depot to hotel by the dirt road than by way of the railroad track. There was no evidence as to the depot agent's scope of duty. The railroad track over the culvert was not floored or covered, and no light or other warning placed there. There was some evidence tending to show that after the injury plaintiff said he had no one to blame but himself, but this he denied.

The plaintiff stated on cross-examination that defendant had never expressly invited, or given him permission to walk on its track or to use its track as a public highway.

The foregoing being the facts in evidence, the first inquiry arising is, was there any evidence from which it might reasonably be inferred that the plaintiff was expressly or impliedly invited by the defendant to use its railroad track as he was using it at the time he fell to his hurt. The plaintiff having testified that he was not expressly invited or permitted by the defendant to use the way he pursued, and the evidence, for that matter, failing to disclose any express invitation, the question is narrowed down to whether, under the facts

in evidence, he was impliedly invited. In this connection we note that the court below charged the jury, in written charge No. 20, "that even if an agent at the depot of defendant told plaintiff that Mr. McGee had gone on with a lantern to the hotel, and that if he went in a hurry, he could catch up with him, or words to that effect, such remarks on the part of such agent would not bind the defendant, or amount to an invitation by the defendant to the plaintiff in this case to use the track of defendant as a highway to go to the hotel from the depot." With the lights before us, this charge was not improperly given. It was not shown by the evidence to have been within the scope of the agent's duties or authority to make such suggestion, and nothing appearing to the contrary it would, as a general rule, seem to be entirely without the scope of a station agent's authority as a representative of a railroad company to suggest to, or invite, passengers leaving its trains or depot, to go to any particular hotel not owned by the company, or to follow any particular route in reaching such hotel, unless such route had otherwise received the sanction of the company's invitation; though it might well be within such agent's authority and duty to inform passengers alighting from trains of a safe way of egress from the depot or depot platforms or approaches or grounds "reasonably near thereto," which he is apparently placed in charge of. The remark of the station agent in this case can hardly be regarded as more than his individual suggestion for which the defendant was in nowise responsible, unless it could be said to appear from the evidence that the route taken up the track to the hotel was within the station or depot grounds or approaches reasonably near thereto, or was a passageway which the railroad company had otherwise than by this remark of the agent

expressly or impliedly invited the public having business with the railroad company, to use as a means of ingress or egress to or from its depot and platforms, within which limitations it might be that the station agent in charge of such depot and grounds would have implied authority from the railroad company to give information and directions to such persons. While this remark has some bearing on the question of contributory negligence, it could hardly be said that a depot agent could by a mere word extend the boundaries of the depot grounds and approaches for the reasonable safety of which the law imposes a duty upon the railroad company; and so the question reverts, independently of the remarks of the agent, to the inquiry, (1) whether the pathway taken and used by the plaintiff at the time of the injury constituted a part of the depot grounds or approaches, (2) or was a passage-way, which the defendant railroad company impliedly invited its passengers, leaving its trains and depot, (including the plaintiff) to make use of, in making their egress therefrom.

Let us first consider the general invitation which is implied by law, and the consequent duty imposed, pertaining to the use of railroad depots, platforms, exits and approaches, and the grounds reasonably near thereto, all of which may generally be comprehended by the term "depot grounds"; what they are and how far they extend.

In the case of *Montgomery & Eufaula Ry. Co. v. Thompson*, 77 Ala., in discussing this question, that opinion first asserts the proposition, that there is a common duty resting upon all owners of real estate, upon which the public is expressly or impliedly invited to enter, that it shall be kept free from traps, and pitfalls, and that for a neglect of this duty, parties injur-

ed thereby may recover damages; but that this rule does not apply to places strictly private, or where persons are neither expected or expressly or impliedly invited to go. It then applies the foregoing principles to railroad station property in the following language: "All the property of a railroad company, including its depots and adjacent yards and grounds is its private property, on which no one is invited, or can claim the right to enter, save those who have business with the railroad. Under this classification, however, we must include attending friends and protectors, who accompany friends to the train to aid them in getting on, in procuring tickets, in checking baggage, and kindred services. The same license is accorded to protecting friends when the traveler is to leave the train. To persons filling these classes, the railroad corporation owes special obligations of duty, different from those due to the general public. While the former come by invitation, express or implied, the latter are mere pleasure-seekers, or are prompted by curiosity. For the use and comfort of the former class, railway companies are bound to keep in safe condition all portions of their platforms, and approaches thereto, to which the public do or would naturally resort, and all portions of their station-grounds reasonably near to the platform, where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go. Within these boundaries, a defect of structure which is likely to, or does cause injury, or any other trap or pitfall producing a like result, will fasten a liability on the railroad owing the duty. Of similar obligations to this primary class, is the duty to provide safe waiting-rooms, and to keep the depot and platform well-lighted in the nighttime." Can it be said that a culvert on the main line of the rail-

road track 235 yards away from the depot is an "approach" to the platform, or "a portion of the station grounds reasonably near to the platform, where passengers would naturally or ordinarily be likely to go," within the meaning of the above stated rule? Manifestly not. In the case from which we quote, this rule was held not to extend to a point on the bluff of a river about fifty yards from the depot, at which plaintiff, who had just got off defendant's train, fell over in the dark in an effort to reach a closet on the bank of the river, which was not lighted, and the bluff not guarded. The same general principles quoted above are followed in *A. G. S. R. R. v. Arnold,* 89 Ala. 690, where the duty to light the platform is laid down, and in *Watson v. E. T. V. & G. Ry. Co.,* 92 Ala. 320; and same case, 94 Ala. 634. But the cases last cited hold that a railroad company is liable in damages to a passenger, who, on alighting by night at a station, where there was an eating house for passengers, crossing a platform between the tracks and the veranda of the house, returning across another platform similarly situated, receives personal injuries from its defective condition; when the evidence shows that both of the platforms, though built by the persons who erected the hotel, were on the railroad's right-of-way, that there was no light at the spot, which was only thirty-seven feet from center of track and that the defective platform, which was opposite to the railroad offices in the building, had been formerly used by the railroad, though not for several years. This platform was held to be a part of defendant's station "grounds" (92 Ala. p. 324) ; that "defendant allowed it to remain there, a standing suggestion and invitation to its use by passengers;" that "the invitation was accepted and passengers frequently used it in going to and from trains;" that it was therefore defendant's

duty to keep it in a safe condition. This brings out what might be called a visual invitation—an invitation by the reasonable appearance of things. This is further emphasized in the case (94 Ala. 636) where it is said: "We cannot suppose that travelers are informed as to the ownership or control of pass-ways thus circumstanced. They act on the appearance of things, and are authorized to so act. Seeing the two bridges or platforms extending from the railroad's platform proper to the ticket office and eating house, they may well suppose that they are invited to take either." There can be no doubt of the correctness of the holding in these cases, that those platforms were within the depot grounds and that an invitation would be implied by the very appearance of things, and the liability in such case would not have been affected even though the land over which the approach-ways extended was not the property of the railroad. See also *Skottowe v. Railroad Co.*, 16 L. R. A. 593, and notes; *L. N. A. & C. Ry. Co. v. Lucas*, 6 L. R. A. 193, and notes; *Johns v. C. C. & A. R. Co.*, 20 L. R. A. 520. In the *Lucas* case just cited, it is said that it is the duty of the railroad company "to provide means for passengers to safely enter its cars at stations, and that duty also requires the carrier to make it safe for them to leave its cars and stations. After the passenger has left the cars and stations of a railroad carrier, its duty as a carrier ceases, but not until then." This duty continues until the passenger has left the depot grounds, as a general rule, or has had a reasonable time to do so.

In the case of *Ensley Railway Co. v. Chewning*, 93 Ala. 24, the plaintiff was a passenger from Birmingham to Coalburg, and had gotten off the defendant's train on its main line to take a train on its branch line in the night. He walked up the track a short distance and

was struck by the train. It was remarked in the opinion, that "under our decisions a trespasser cannot maintain an action against a railroad company for injuries sustained while trespassing upon its roadbed, unless such injuries were caused by reckless, wanton or intentional negligence." And further on the court said: "While a person intending to take a train, awaiting its arrival, should not be regarded as a trespasser, if he merely cross or inadvertently step on the track in the dark, at or about the usual stopping place; yet, plaintiff, having walked up the track beyond the limits of the usual stopping place, to meet the train, and having knowingly and voluntarily stepped and stood on the cross-ties where he was not invited, and had no right to be, must be regarded as a *quasi*-trespasser, or as we have said, guilty of negligence contributory to his own injury."

Applying the principles involved in the foregoing cases, we are of the opinion that the place where the plaintiff in this case was injured, under the facts so far considered, being at a culvert 235 yards up the main line of track from the depot, was not within the limits of defendant's depot grounds, or approaches, "reasonably near" to the depot, to which the general invitation implied by law, and the duty imposed thereby, as stated in *Montgomery & Eufaula Ry. Co. v. Thompson, supra,* attaches; and that there was nothing in the appearance of things in and around the depot, as the plaintiff stepped out of the door into the darkness of the night, just before this misfortune came upon him, which could reasonable have led him to believe that the railroad company held out or designed its main line of track as an approach to or pathway of egress from its depot, or, for that matter, as a passage-way to be used by its passengers who might wish to go to a hotel in which the railroad had no interest and which was some 250

[Alabama Great Southern Railway Co. v. Godfrey.]

yards from its depot. It was very dark and the plaintiff could not see 235 yards up the track; he could not even see the culvert when he arrived at it; he could not have seen the steps referred to, and so he could not imply an invitation from the appearance of the pathway which he chose to follow. He had never been that way before, and the evidence does not show that he ever had any knowledge of, or acted upon any previous custom on the part of the passengers to go to the hotel that way,—in fact, his testimony induces the belief that he did not have any such knowledge. So that, even if the evidence of common use by passengers of the way taken by plaintiff, raised any implication of invitation by the company, it cannot be said, under the facts in evidence, that this invitation ever reached the plaintiff, or that he acted upon such unknown invitation; and therefore there was no causal connection between the unknown alleged implied invitation and the injury sustained. One acting upon an invitation, express or implied, has the right to presume from knowledge of that fact that the premises he is invited to use are kept at least reasonably safe, and he is not required to be careful to keep on the lookout for pitfalls.—*Watson v. E. T. V. & G. Ry.*, 92 Ala. 325. But one who acts without knowledge of the invitation would ordinarily be negligent in presuming safety in premises of the nature and condition of which he was ignorant, especially at night. A reasonably prudent man would exercise more care in using premises where he was ignorant of any invitation to use them than he would if he knew or had good reason to believe he was invited to use them, especially if it were dark and he was not therefore familiar with them.

We now come to enquire whether, under the facts in evidence, without regard to the general duty to keep its depot grounds in safe condition, the defendant had

impliedly invited its passengers leaving its trains, at Epes, at and before the time of plaintiff's injury, to use this pathway taken by plaintiff, leading as it did beyond the limits of the depot grounds as hereinabove defined, along the track for some 250 yards to some five or six steps up the side of the cut and then on a little further to the hotel. In support of their contention in this connection, counsel for appellee rely mainly upon the proof of years of usage of this way by passengers leaving the depot for the hotel, and thus going from hotel to depot, without any objection by defendant, and, it might be inferred from the evidence, with defendant's knowledge; and, further, the fact that the steps up from the cut, when removed several years before by the section foreman, were replaced by the railroad's supervisor. It is also urged that this path was on defendant's property and was generally used as the most convenient route, by passengers, in leaving its depot premises to go to the hotel. The fact that the culvert crossing beneath the track was uncovered and unlighted, and was dangerous to pedestrians using the track, especially at night, is patent and uncontradicted.

"The term 'invitation,' within the rule that the owner of the property who has held out any invitation, allurement, or inducement for others to come upon the property, must keep his premises in a safe condition, imports that the person injured did not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed, but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession or control of the premises, but that it was in accord-

ance with the intention and design with which the way
or place was adapted and prepared or allowed to be so
used.   The true distinction is this:   A mere passive
acquiescense by an owner or occupier in a certain use
of his land by others involves no liability.   But if he
directly or by implication induces persons to enter on
and pass over his premises he thereby assumes an obli-
gation that they are in a safe condition, suitable for
use, and for a breach of this obligation he is liable in
damages to a person injured thereby."—*Sweeny v. Old
Colony & N. R. Co.,* 92 Mass. (Allen), 368, 873, 87 Am.
Dec. 644, cited in *L. & N. R. R. Co. v. Sides,* 129 Ala.
402; 4 Words & Phrases, p. 3670.   "It is sometimes diffi-
cult to determine whether the circumstances make a
case of invitation, in the technical sense of that word,
as used in a large number of adjudged cases, or only a
case of mere license.   "The principle," says Mr. Camp-
bell, in his treatise on Negligence, 'appears to be that
invitation is inferred where there is a common interest
or mutual advantage, while a license is inferred where
the object is the mere pleasure or benefit of the person
using it.' "—Harlan, J., in *Bennett v. L. & R. R. Co.*
102  U. S. 276-285.

In the case of *Sturgis v. D. G. H. & M. R. Co.* 72 Mich.
619, which is nearly in point, and in which it was held
that no invitation was implied, the plaintiff fell into
a cattleguard, which crossed under the railroad track.
Plaintiff had left the train after dark, was not acquaint-
ed with the premises, and instead of going into the de-
pot, which fronted on a highway, on the other side, and
without making inquiry, walked along a platform 270
feet long to where it ended with a step down upon the
track in the station yard, and then walked up the track
in the direction taken by the train which he had left.
There were no lights along the track after passing the

depot. After walking up the track about 150 yards beyond the platform, plaintiff fell into the cattle-guard which had no facilities for crossing, There was a safe way from the front of the depot by the regular high-way to the village, which by reason of an angle was further than the straight line along the track to the cattle-guard on the highway at the end of the station grounds. The track was leveled and graded. The rail-road had all necessary platform accommodations with access to the only highway leading to the town. The track did not differ from those usually found on railroad premises and no other means of travel on it appeared than on any such track. The company never took measures to light it or facilitate ingress or egress. The plaintiff urged that the way by the track was very gen-erally used as a shorter cut between depot and village than furnished by the regular road. The court observ-ed: "The travel over it was just such as will be found anywhere along such tracks which 'cannot be closed more effectually than by a cattle guard. It is imprac-ticable to keep off trespassers from an open track and all who go upon it do so at their own risk of such dan-gers as are incident directly to such use. Under all the decisions made in this state on the subject, a compa-ny that has provided all reasonable facilities for in-gress and egress from its station houses has done its full duty in that regard. No company can be bound to suppose that passengers who do not know the way will neglect the means open to their sight, and go off in the darkness somewhere else. We think no case was made out." See also Hutchinson on Carriers, 3rd ed., § 937.

In the absence of invitation or license, "It is the set-tled doctrine in this State, supported by the great weight of authority in England and America, that or-dinarily the right-of-way of a railroad company is its

exclusive property. Its free and unobstructed use is essential to the transaction of the business of the company in transporting freight and passengers, and to the safety of its trains. Mere acquiescence in the use of such right-of-way does not confer on the public a right to use it, nor create any obligation to look out for the persons using it, other than the general duty to lookout for obstructions. In the absence of law, making such acts punishable, railway companies are powerless to prevent such use of their tracks. Under the conditions in which they are situated physical prevention is impracticable, and acquiescence is morally compulsory. Mere acquiescence, under such circumstances, is not permission."—*M. & C. R. Co. v. Womack*, 84 Ala. 150; *M. & C. R. Co. v. Lyons*, 62 Ala. 74; *Mizell v. So. Ry.*, 132 Ala. 540; *S. & W. Ry. Co. v. Meadows*, 95 Ala. 137; *Vernon v. A. G. S. R. Co.* 103 Ala. 574; *Montgomery's Ex. v. A. G. S. R. Co.* 97 Ala. 305.

Applying the principles laid down in the authorities, to the facts of this case, we do not think the plaintiff discharged the burden of proving invitation on the part of the defendant company. Mere acquiescence in the use of the track, for that distance beyond its depot, even by passengers, going to the hotel, is not enough to remove the case from the realm of mere license—the company having furnished open, free and safe exit to the highway, and there being no general duty resting upon the carrier to construct or maintain a safe passageway for its passengers to and from any particular hotel, unless under exceptional circumstances, such as eating houses where the trains are stopped for passengers to get meals, or hotels in which the carrier is interested, or where situated within, or adjoining, depots or depot grounds. But, generally speaking, it is no part of a carrier's duty to see a passenger safely landed

at his hotel.　When he has been furnished safe and sufficient egress from the depot grounds, the relation of carrier and passenger ceases.

It was not shown that the railroad company constructed the steps in question; its servants merely took them down and replaced them, and the company impliedly acquiesced in the same use afterward that had existed before.　Steps up the side of a shallow cut 250 yards from depot could furnish no visual invitation to use a pathway commencing at the depot.

It is not necessary to extend this opinion by considering the numerous assignments of error separately. The court below erred in refusing the general charge requested in favor of the *defendant,* as well as the motion for a new trial.

Reversed and remanded.

TYSON, C. J., and ANDERSON and DENSON, JJ., concur.