MARIA COGDELL, Administratrix of Samuel Cogdell, v. WIL-
MINGTON AND WELDON R. R. CO.

(Decided March 28, 1899).

*Negligence—Contributory Negligence—Carrier and Con-
signee—Nonsuit.*

1. Contributory negligence and assumption of risk, being in the
   nature of pleas in confession and avoidance, are affirmative
   defences and can not be considered on a motion for nonsuit,
   and upon such motion, the evidence must be taken in the
   light most favorable for the plaintiff; and when so construed,
   if it amounts to more than a mere *scintilla* of proof, it must
   be submitted to the jury.

2. The duty of a common carrier is three-fold—to receive, carry
   and deliver at some safe and convenient place—and for its
   negligent performance the carrier will be liable for injuries
   sustained by any one upon the premises by invitation, ex-
   press or implied.

CIVIL ACTION for damages for the death of intestate, oc-
casioned as was alleged by the negligence of the defendant,
tried before *Norwood, J.,* at February Term, 1898, of BEAU-
FORT Superior Court. At the close of plaintiff's evidence
the defendant moved for judgment of nonsuit, which was
allowed by his Honor. The plaintiff excepted and appealed.
A statement of the evidence appears in the opinion.

*Mr. Charles F. Warren,* for plaintiff (appellant).
*Mr. John Small,* for defendant.

DOUGLAS, J. This is an action brought by the adminis-
tratrix to recover damages for the death of her intestate, al-
leged to have occurred through the negligence of the defend-

ant. The following facts among others are either admitted in the pleadings or rest on substantial evidence tending to prove them: The defendant had constructed a wharf out into the river, upon which it had built a warehouse and side-tracks for the purpose of connecting with water transportation. This wharf was built on piles and was so arranged by lowering the track as to bring the floor of the cars on a level with the platform, for convenience in loading and unloading. The scene of the accident was apparently at the end of the wharf farthest into the river, where an open coal car had been left for the purpose of being unloaded into the steamers of the Styron Transportation Company, which habitually obtained its coal in this manner. The width of the platform alongside the car was about four feet, and the open space between the inner edge of the platform and the car was about two feet. This space for several feet was covered by a wooden apron that was hinged on to the platform and rested against the side of the car when in use, or could be turned back so as to lie on the platform when not needed. The cross-ties projected but little beyond the edge of the car, leaving the remainder of the space open between them and the timbers supporting the platform. The main beams went across this space, but they were about eight or ten feet apart.

One of the witnesses testified as follows: "There is no planking under the platform over the water and none from the side of the warehouse to the end of the cross-ties over the water. There was room for a man to drop between the side of the car and edge of the platform, and if he should fall, there was nothing to catch him and prevent his falling into the river. The water at this point was eight or ten feet deep."

No one saw the accident, but all the circumstances tend to show that he fell or was standing upon the apron which

broke beneath him, and let him drop between the platform and car into the river, at the bottom of which his body was soon afterwards found.

The apron was made of inferior lumber and was partly rotten. After the accident one plank was found broken and two of its three hinges broken or pulled out, so that it was held to the platform only at one end. The dangerous condition of the apron, which was used to keep loose coal from falling into the water and for a man to stand on while unloading, was not apparent before the accident. At the close of plaintiff's evidence the defendant moved to nonsuit the plaintiff. The Court granted the motion.

The defendant alleged that the apron was built there by the consignee of the coal, and was not intended to stand on, and that, therefore, the deceased, being employed by the consignee, assumed the risk, and was also guilty of contributory negligence; contributory negligence and assumption of risk, being in the nature of pleas in confession and avoidance, are affirmative defences and can not be considered on a motion for nonsuit. *Bolden v. R. Co.,* 123 N. C., 614. It is equally well settled that in such cases the evidence must be taken in the light most favorable for the plaintiff, and that if when so construed, there is more than a mere *scintilla* of evidence tending to prove the plaintiff's contention, it must be submitted to the jury, who alone can pass upon the weight of the evidence. *Spruill v. Ins. Co.,* 120 N. C., 141; *Cable v. R. Co.,* 122 N. C., 892; *Cox v. R. Co.,* 123 N. C., 604.

The plaintiff contends that there were three distinct acts of negligence on the part of defendant directly contributing to the death of the deceased: (1) Leaving the apron in its unsound and dangerous condition, so as to become a death-trap instead of a protection; (2) So constructing the wharf as to leave, without any necessity, so large a space between the

platform and the car, which was in itself dangerous to any one engaged in unloading the car; (3) Failing to cover the open space between the end of the cross-ties and the platform. It may be that none of these acts would be negligence *per se,* but they are all evidence tending to prove negligence. In the absence of any one of them, the deceased would not have lost his life. If there had not been so large a space between the platform and the car, the deceased would not have fallen through. If the apron had been sound, it would not have broken, and the deceased would simply have rolled on to the platform. If a plank had been placed on the cross-beams at the end of the ties, even if the apron had broken and the deceased had dropped between the car and the platform, he would have landed on the plank only four feet below. In either event, the probability of serious injury would have been slight. At least two of these precautions, either one of which would have saved a human life, could have been taken at trifling expense and without any apparent inconvenience. A new apron and a few planks at the end of the cross-ties would have cost but little. We see no necessity for the wide space between the platform and the car, which has proved to be dangerous. It is common knowledge, at least with those who have any knowledge of railroads, that freight cars do not vary in width to any such extent. It may be said that it was necessary to have this space to permit employees to walk beside the car; but if so, on what would they walk? If a plank had been there for them to walk on, then, in all probability, the deceased would have caught on that plank and would not have been drowned. It should be borne in mind that the location of the accident was not along the main track where the trains were in the habit of running, but was at a terminal point where the cars were carried only to be unloaded. As unloading the car was the object of its

location, then it was the duty of the carrier to give the consignee a reasonable opportunity of unloading, essentially including a safe and convenient place.

The duty of a carrier is three-fold—to receive, carry and deliver. The common law requirement of *personal* delivery has been necessarily relaxed in favor of railroads, but the duty still remains of delivery at some safe and convenient place. If the goods are such as can be conveniently unloaded by the carrier and placed in an ordinary depot warehouse, then it is its duty to do so; but if the freight is such as by necessity, custom or contract must be unloaded by the consignee, he has a right to demand of the carrier that the car be placed so that it can be unloaded with reasonable safety and convenience. Hutchinson on Carriers, section 378a; 3 Wood on Railways, page 1909, section 444; 4 Elliott on Railroads, section 1519, 1521. Until this duty is performed, there is no delivery, and for its negligent performance the carrier will be liable. *Independence Mills Co. v. Ry. Co.,* 72 Iowa, 530, 539; The liability of common carriers and those in the nature of such, for negligent injuries to those upon their premises by invitation, express or implied, is well settled. 4 Elliott, *supra,* section 1590; 2 Wood, *supra,* sections 310, 310a; Wharton Negligence, sections 349, 821, 823; 1 Thompson on Negligence, page 316; 1 Fetter Car. Pas., section 46.

The general rule is well laid down by Judge Cooley in his work on Torts, in the following words, quoted with approval in *Bennett v. R. Co.,* 102 U. S., 577, 580: "Where one expressly or by invitation invites others to come on his premises, whether for business or any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and

prudence to render the premises reasonably safe for the visit."

For error in the direction of a nonsuit, a new trial must be ordered.

New trial.