(No. 5054. Decided December 28, 1904.)

OSCAR ANDERSON, *Appellant,* v. SEATTLE-TACOMA INTER-
URBAN RAILWAY COMPANY, *Respondent.*[1]

RAILROADS—DANGEROUS PREMISES—RIGHT OF WAY—NEGLIGENCE
—INJURY TO EJECTED PASSENGER ON RIGHT OF WAY—TRESPASSER.
Where a passenger is wrongfully ejected from a train four miles
from the city, he is not a trespasser in walking back to town
on the right of way, and he does not assume the unusual risk
of danger of contact with an unprotected electrically charged
third rail, of which he was not warned and had no notice.

SAME—NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE—EVIDENCE—
SUFFICIENCY—QUESTION FOR JURY. In an action for personal
injuries sustained by a passenger after being wrongfully ejected
from a train, by reason of coming in contact with an electrically
charged "third" rail while he was walking back along the right
of way, the negligence of the railroad company, and contribu-
tory negligence of the plaintiff, is for the jury, and it is error
to direct a non-suit, where it appears that the power was carried
in an electrically charged unprotected third rail, laid along
the ground, and having the appearance of an ordinary rail, that
plaintiff was ejected at night at a station four miles from the
city, without any notice or warning of the danger, that the
road had been open for travel only about one week, and plain-
tiff did not know that the rail was electrically charged or dan-
gerous, and did not see the warning signs posted at the station,
on account of the darkness, and was unfamiliar with the high-
ways in the locality, and his business required an immediate
return.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered July 15, 1903, upon grant-
ing a motion for a nonsuit, at a trial before the court and
a jury, dismissing an action for personal injuries sus-
tained by a passenger, after ejection from a train, through
coming in contact with an electrically charged third rail
upon the right of way. Reversed.

[1]Reported in 78 Pac. 1013.

*James M. Epler,* for appellant.

*Piles, Donworth & Howe,* for respondent. `The appellant was a trespasser in walking back upon the track. *Hargreaves v. Deacon,* 25 Mich. 1; *Kelley v. Michigan Cent. R. Co.,* 65 Mich. 186, 31 N. W. 904, 8 Am. St. 876; *McCaughna v. Owosso etc. Elect. Co.,* 129 Mich. 407, 89 N. W. 73, 95 Am. St. 441; *Matson v. Port Townsend etc. R. Co.,* 9 Wash. 449, 37 Pac. 705; *Anderson v. Northern Pac. R. Co.,* 19 Wash. 340, 53 Pac. 345. A trespasser acquires no rights by his trespass. Bishop, Non-Contract Law, § 845; Cooley, Torts (2nd ed.), p. 792; Fetter, Carriers of Passengers, § 236; 7 Rapalje & Mack's Digest of Railway Law, pp. 1126-1128. It was his duty to leave the track at the public roads at the station. *Ham v. Delaware etc. Canal Co.,* 142 Pa. St. 617, 21 Atl. 1012; *Benson v. Central Pac. R. Co.* 98 Cal. 45, 32 Pac. 809; *Ham v. Delaware etc. Canal Co.,* 155 Pa. St. 548, 26 Atl. 757, 20 L. R. A. 682. He can not recover in this action upon his contract of carriage. *McDonough v. Great Northern R. Co.,* 15 Wash. 244, 46 Pac. 334; *Price Baking Powder Co. v. Rinear,* 17 Wash. 95, 49 Pac. 223; *Cox v. Richmond etc. R. Co.,* 87 Ga. 747, 13 S. E. 827; *Parmelee v. Savannah etc. R. Co.,* 78 Ga. 239, 2 S. E. 686; *Bolton v. Georgia Pac. R. Co.,* 83 Ga. 659, 10 S. E. 352; *Gas-Light Co. v. Rome etc. R. Co.,* 5 N. Y. Supp. 459. The appellant was not accepted as a passenger on this train and the company did not become responsible to him. *Stevenson v. West Seattle etc. Co.,* 22 Wash. 84, 60 Pac. 51; *Merrill v. Eastern R. Co.,* 139 Mass. 238, 1 N. E. 548, 52 Am. Rep. 705; *Webster v. Fitchburg R. Co.* 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *Georgia Pac. R. Co. v. Robinson,* 68 Miss. 643, 10 South. 60; *Jones v. Boston etc. R. Co.,* 163 Mass. 245, 39 N. E. 1019; *Haase v. Oregon R. &*

*Nav. Co.,* 19 Ore. 354, 24 Pac. 238; *Schaefer v. St. Louis etc. R. Co.,* 128 Mo. 64, 30 S. W. 331; *Schepers v. Union Depot R. Co.,* 126 Mo. 665, 29 S. W. 712.

HADLEY, J.—This is an action to recover damages for personal injuries received by the appellant and alleged to have been caused by the negligence of the respondent. The respondent is the owner and operator of an electric railroad between the cities of Seattle and Tacoma. The appellant's complaint alleges that, on the 5th day of October, 1902, he was a passenger on a car of the respondent going from Tacoma to Seattle, and was riding on a ticket purchased by him at Seattle from an agent of respondent, which ticket entitled him to ride on respondent's cars from Seattle to Tacoma and return; that he was on a car of respondent, riding on said ticket, when the car reached a point about four miles from Tacoma in the direction of Seattle; that the cars were stopped at said point, and one of the men in charge—either the motorman or conductor—twice requested appellant, in a manner amounting to a command, to get off the car; that he did get off, and the car at once started, leaving appellant standing beside the track at a station the name of which is unknown to him; that, upon being forced to get off the car, he at once started back toward Tacoma, and walked on the ties of the railroad bed; that he had proceeded about a mile, to a point where the road bed is upon an embankment, elevated some five or six feet, the embankment being quite steep, at which place he saw a bridge a short distance ahead; that, for fear of some accident, he tried to get off the road bed and down the embankment, and, in his efforts to descend, he reached out his hand and took hold of one of the rails placed and used by respondent on its track, when he received a

terrible electric shock; that the shock was so severe that it rendered him unconscious, threw him prostrate upon the ground, where he lay in an insensible condition for three-quarters of an hour, and, on recovering consciousness, he found he could not use his left hand, arm, or leg, they seeming to be paralyzed; that he was injured about 6:30 P. M., and, after recovering consciousness, he dragged himself along by the aid of his uninjured leg until he reached a hotel in Tacoma, about 1 o'clock A. M.; that respondent company had left said rail so charged with electricity in an exposed position, with no covering over it, and with nothing to protect any one who should touch it from receiving the full force of the electric charge borne by the rail; that in so doing respondent was guilty of negligence, and that by reason of such negligence appellant was injured without fault on his part. The nature and continuing effect of the injuries are also set forth in detail. The answer is a general denial of the material averments of the complaint, and it also affirmatively alleges contributory negligence. A trial was had before the court and a jury. At the conclusion of the plaintiff's evidence, the respondent challenged the sufficiency of the evidence to sustain a verdict in behalf of plaintiff, and moved the court to take the case from the jury, and enter judgment in favor of the defendant, as provided by statute. The motion was granted by the court, and judgment was entered dismissing the action, at plaintiff's costs. The plaintiff has appealed.

The evidence shows that appellant had bought a round trip ticket for passage over respondent's road from Seattle to Tacoma and return. He had made the trip from Seattle to Tacoma in the afternoon of the day the accident happened. After spending some time in Tacoma, and

at about 6 o'clock in the evening, he attempted to get upon one of respondent's cars for the return trip to Seattle. The car was then on Pacific avenue in Tacoma.  He approached it from the left side, and just as it was starting he stepped upon the front step.  The front door upon that side was closed, and appellant says he thought they were going to open it and let him in, but they did not do so.  There is evidence to the effect that, when these cars were afterwards flagged across the Northern Pacific railroad tracks in Tacoma, the appellant had sufficient time to go around the car, and get into it from the other side.  But it also appears from the evidence that he did step off at said place, and that the car started again almost immediately, when he stepped back where he had been standing.  Whether there was sufficient time for appellant to have gone around the car and entered it from the right side or not, he in any event did not do so, and remained upon the left front step until the car reached the first station out of Tacoma.  Upon reaching this station the motorman opened the door and told appellant he must get off the car.  Appellant stepped with one foot on to the station platform, and the car started immediately.  He then jumped back upon the car step, and the car was again stopped, when he was forced to get off.  When he was told he must get off he said, "I have got a ticket to go to Seattle.  Give me time to get around on the other side and get on the car."  But no time was given, and the car immediately moved away.  Being thus left, and believing that his business required his return home that night, appellant immediately started back toward Tacoma for the purpose of trying to get a boat for Seattle.  By this time darkness had come on, and appellant, being a stranger to the surroundings, and unacquainted with the topography and highways of the

locality, started to walk upon the railroad track, with the result stated in his complaint.

The trial court, when ruling upon the motion for nonsuit, stated, as shown by the record:

"I do not think there is any doubt but what the evidence shows that the defendant neglected its duty to the plaintiff, in not either permitting him to go in the car from the front door where he was hanging on the outside, or giving him sufficient time to get around to the other side of the train where he could get in where it was open."

The court further stated that he believed appellant would have a cause of action against respondent for wrongfully leaving him at the station, but that he was guilty of negligence when he started to walk on the railroad track and is not entitled to recover for his injuries. The appellant, however, bases his right to recover upon the theory that respondent negligently put him off the car on the right of way, when that right of way was in an unsafe condition, and without giving him any notice or warning of the danger. He testified that he did not know of the existence of the electrically charged rail, and there is no evidence to the contrary. This accident occurred on the first Sunday after the road was opened for travel. There is evidence that the newspapers had mentioned the matter of this third rail, but it does not appear that appellant knew about it. The evidence shows that neither the motorman nor the conductor, nor any one else, notified him, or warned him, of the danger, when he was put off the car. It must, therefore, be assumed, for the purposes of this discussion, that he was in absolute ignorance of the presence of danger from such a source. It appears that a notice was posted at the station calling attention to this dangerous rail; but in the darkness appellant did not see it, and knew nothing of it. There were some elec-

tric lights at the station, but he did not see the notice, and started to walk upon the track in entire ignorance of the presence of any danger not ordinarily to be expected when walking upon a railway track. The respondent claims that, having fenced its right of way, and posted the notices as to danger, it thereby discharged its duty in the way of securing the public, and was entitled to use upon its own premises such devices as it chose to operate. It is, therefore, claimed that appellant was a trespasser upon respondent's premises at the time he was injured, and for that reason cannot recover.

It cannot be said that appellant's presence upon respondent's premises was initiated by trespass. He had, by contract and for a consideration, first entered upon the premises, and had been carried as a passenger from Seattle to Tacoma. The same contract called for his transportation from Tacoma to Seattle; and he therefore not only had a right to be upon the premises, but was there by the invitation and consent of respondent. The conduct of respondent's agents and employees, in forcing him to leave the car, is unexplainable in the light of the evidence in the record. Certainly the demand for speed in modern travel does not call for such zeal on the part of the employees of a railway company that time shall not be given a passenger to get aboard when he has already paid his money, in the usual manner, for his transportation. The fact remains in this instance, however, as appears from the record, that just that thing occurred, and appellant was forced to step from the car upon respondent's right of way. He was, therefore, not a trespasser *ab initio,* and certainly not one up to the time he was left, in the night time, at a strange place upon respondent's premises. Being thus left upon the premises

where he had a right to be, did he thereafter become a trespasser?

It is true, he was left at a station surrounded by farm houses, but that was only part of the premises to which he had been invited by respondent, when it accepted his money and agreed to carry him as a passenger. He had the right to pass over the entire right of way in respondent's cars, but that right had been denied him. When he was left by respondent, he was not directed to leave its premises, but was merely forced from its cars, and deposited upon its right of way. He was not informed how, in the night time, he could find his way over the ordinary highways. Being thus left upon the premises, under all these circumstances, did he have no rights greater than those of an ordinary trespasser, when he moved along respondent's track? It is true he was not invited upon the premises as a pedestrian, but he was invited to come for business purposes, and we believe, under all the conditions, that he did not become a trespasser in the really tortious sense of that term, even though some elements of technical trespass may have been present. He was, in any event, entitled to the reasonable protection from injury which one human being owes to another when placed in like situation. Respondent's agents must have known that, from common experience, the thing appellant was most apt to do was to take the track back to Tacoma. They should, therefore, have seen that he was advised of the danger of such a course because of the unusual and imperceivable danger to an uninformed traveler. Doubtless he was required to take the risk of all ordinary dangers attending a pedestrian upon a railway track, such as contact with moving trains, falling through bridges, and other usual dangers. But since he came upon respond-

ent's premises rightfully, and did not come as a wilful trespasser, we think he was not required to take the risk of such an unusual and hidden danger as this third rail. Its character was unknown to him, and its powerful, death-dealing force was entirely concealed.

"The great force that was being carried over the wires gave no evidence of its existence. There was no means for a man of ordinary education to distinguish whether the wire was dead or alive. It had all the appearance of having been properly insulated. From this fact there was an invitation or inducement held out to Clements to risk the consequences of contact." *Clements v. Louisiana Electric Light Co.*, 44 La. An. 692, 11 South. 51, 32 Am. St. 348, 16 L. R. A. 43, 4 Am. Elec. Cases, 381, 386.

In the case at bar, however, the dangerous agency was not a wire which, when strung upon insulators, may ordinarily be supposed to be charged with electricity, but it was a common rail, bearing only the appearance of an ordinary rail of a railway track, and disclosing no connective relations which would render it more dangerous than an ordinary piece of iron. If modern transportation methods involve the use of such concealed, unprotected, dangerous, and deadly devices where persons of common experience may be expected to come in contact with them, we believe those who use them should not escape liability unless they exercise such a degree of care to warn and protect those who are injured as the circumstances and surroundings reasonably require. Whether such care is exercised in a given case, becomes a question of fact for the jury. In a case of this kind, the conditions are out of the ordinary and call for care commensurate therewith. To the uninformed, the danger in this rail was as completely hidden as is the danger in the case of a spring gun. It is true, spring guns are usually set for the express purpose of

inflicting injury or taking life, while this rail was placed without such intention, but to be applied to the useful purposes of commerce and transportation. To one ignorant of the presence of the danger, however, injury follows alike as the result of coming in contact with either device. This court has held that death to an absolute trespasser from the discharge of a spring gun, not set to kill any particular person, makes the one who sets it guilty of murder in the second degree. *State v. Barr,* 11 Wash. 481, 39 Pac. 1080, 48 Am. St. 890, 29 L. R. A. 154. While the absence of criminal intent may remove this case from the domain of crime, yet resultant damage from neglect to sufficiently guard and warn against what is, in itself, an entirely concealed death trap is, in effect, the same as that visited by the spring gun, and is certainly ground for recovery of damages. Whether such neglect exists in this case is for the jury to say, and the same is also true as to whether appellant was guilty of contributory negligence.

The general principle applying to those who go upon premises of another by invitation or inducement for business purposes is well expressed in *Carleton v. Franconia Iron & Steel Co.,* 99 Mass. 216, as follows:

"The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of."

The above statement of principle exactly covers the relations of respondent and appellant at the time and place the latter was put off the car. If he had, at that place, come in contact with this hidden danger, the stated prin-

ciple would have completely covered this case without leaving room for argument. The concealed danger was not, however, at that immediate point, but first appeared just outside the station grounds, a few feet away. Unless a radical change of relationship occurred the moment appellant crossed the line between the station grounds and the unprotected third rail, then it did not occur at all. For reasons already stated, we think, as he was not a trespasser in the beginning, he did not become a real trespasser at all, but was on respondent's premises by inducement for business purposes, and being left as he was under the peculiar circumstances, he was not required to measure with exactness any given number of square feet of respondent's right of way which he might occupy and at the same time feel secure from hidden and unusual dangers, unless he had been warned of the danger. We therefore think the authority quoted is applicable to appellant's situation at the time he was injured. The same principle is sustained in the following cases: *Bennett v. Railroad Co.,* 102 U. S. 577; *Nickerson v. Tirrell,* 127 Mass. 236; *Davis v. Central Cong. Soc.,* 129 Mass. 367, 37 Am. Rep. 368; *Beck v. Carter,* 68 N. Y. 283, 23 Am. Rep. 175; *Camp v. Wood,* 76 N. Y. 92, 32 Am. Rep. 282; *Hayward v. Merrill,* 94 Ill. 349, 34 Am. Rep. 229; *Hartwig v. Chicago etc. R. Co.,* 49 Wis. 358, 5 N. W. 865.

Respondent cites a number of cases where the relationship in the beginning was that of trespasser, and so continued until the time of the injury. Such, as we have seen, was not true here. In *Ham v. Delaware etc. Canal Co.,* 155 Pa. St. 548, 26 Atl. 757, 20 L. R. A. 682, cited by respondent, a passenger was wrongfully ejected from a train, and was afterwards killed while walking upon the track. The standard set in that case was that the

deceased should have left the track "at the earliest prac-
ticable opportunity that a reasonably prudent man would
have discovered and seized, and that the plaintiff had the
burden of proof that he did so." The question was left
to the jury. The same case is also cited by respondent
as reported in 142 Pa. St. 617, 21 Atl. 1012, in which
the court uses the language that nothing short of "imper-
ious necessity" would have excused the deceased in con-
tinuing on the track, but the opinion on the second ap-
peal clearly established the rule above stated as to pru-
dence and care, and left it for the jury to decide the
fact in that regard. *Benson v. Central Pac. R. Co.,* 98
Cal. 45, 32 Pac. 809, also cited by respondent, was a case
where a six-year old child was carried with her father
beyond her station. She and the father walked back
upon the railroad track and the child was struck by a
train. Recovery was denied. The accident happened in
broad daylight, and, as we have already intimated, one
walking upon a railway track under such circumstances,
although not a trespasser from the beginning, must, in
the absence of wanton negligence on the part of the rail-
way company, take the risk of such ordinary dangers as
the running of trains, but that a different rule should
apply where a concealed deadly agency is strung contin-
uously along the track, and of which the pedestrian has
received no notice. *Webster v. Fitchburg R. Co.,* 161
Mass. 298, 37 N. E. 165, 24 L. R. A. 521, was a case
where a person in possession of a ticket, while running
across the company's tracks outside the passenger station,
apparently to catch a train about to start, was struck and
killed by another train. Recovery was denied on the
theory that he had not yet become a passenger. In any
event, whether he was such or not, he was required to
look out for such known dangers as running trains when

he was upon the tracks. The facts of other cases cited by respondent we believe do not bear sufficient analogy to the facts of this case to make a discussion of them profitable here.

For these reasons, we think the questions of negligence and contributory negligence, under the evidence as introduced, were for the jury, under proper instructions. We therefore think the court erred in withdrawing the case from the jury. The judgment is reversed, and the cause remanded with instructions to proceed with a new trial.

FULLERTON, C. J., and DUNBAR and ANDERS, JJ., concur.