[Southern Railway Co. v. Bates.]

# Southern Railway Co. *v.* Bates.

## *Injuries Suffered on Premises.*

(Decided April 23, 1915.    Rehearing denied June 3, 1915.
69 South. 131.)

1. *Negligence; Condition and Use of Premises; Liability.*—An own-
er may permit his premises to be used by the public for so long a
time and in such a manner, without protest or objection, that the
public may reasonably presume that the owner will give warning or
notice of any change in condition which would render continued use
of the premises unsafe, and the owner is bound to keep the premises
in a safe and suitable condition for those so permitted to use them;
and if he leaves or places some dangerous structure or defect on the
premises, without notice to others, from which he might reasonably
apprehend danger or injury to those others accustomed to use them,
he is liable for their consequent injury.

2. *Railroads; Station; Condition and Use; Injury.*—An occupier of
premises, such as a railroad station, who either directly or by impli-
cation induces others to come upon them, thereby assumes an obliga-
tion that such premises are in a reasonably safe condition, so that
those there by his invitation shall not be injured by them or in
their use, for the purpose for which the invitation was extended; the
term "invitation" including not only express invitation, but an invita-
tion which may be implied from custom, usage, or conduct on the part
of the owner, which invitation may be inferred where common inter-
est or mutual advantage prompts it, the rule being limited to cases in
which there is some mutuality of interest, and not to be extended to
mere voluntary licensees, present for their own convenience, or out of
curiosity.

3. *Same.*—Where the action was for personal injury while on the
cotton platform of defendant's station, and the allegation was that
plaintiff went upon the platform by consent and on invitation of
defendant's servants or agents, evidence as to the known custom or
usage of defendant or its agent, made the defendant's implied invita-
tion a question for the jury and not for the court.

4. *Same.*—In such a case evidence as to the custom before and at
the time of the injury in regard to the use of a platform, and as to
its consideration, and the condition of the steps leading thereto, which
fell when plaintiff stepped upon them, was properly refused.

5. *Same; Mutuality of Interest.*—Where the person who was in-
jured came to speak about other business with a cotton buyer whom
the defendant railroad had permitted to use its platform, his coming
making it unnecessary for the buyer to leave his weighing and mark-
ing of cotton for shipment, there was some mutuality of interest
between such person, the cotton buyer and the railroad, within the
rule as to the liability of an owner of premises for personal injury
to an invitee injured by or from its condition or use.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by W. M. Bates against the Southern Railway Company for injuries while on its premises. Judgment for plaintiff, and defendant appeals. Affirmed.

Transferred from the Court of Appeals of Alabama under section 6, Act April 18, 1911 (Gen. Acts 1911, p. 450).·

Count 2 is as follows: After describing plaintiff and defendant, and stating the time and place, it avers plaintiff went upon the cotton platform of defendant at its depot in Leighton, Ala., by consent and invitation of defendant's servants or agents, and when he started to leave said platform he stepped upon the front steps leading from said platform, and they fell with plaintiff. Then follows catalogue of injuries suffered. And plaintiff avers that his injuries resulted from and were proximately caused by defendant in permitting or allowing said steps to be and remain insecurely and defectively attached to said platform.

The demurrers raise the proposition that the complaint shows that plaintiff was a trespasser at the time of the accident, and charges no more than simple negligence, and that it does not appear that plaintiff's injury was due to any breach of duty which defendant or his employee owes plaintiff, or that he· was at a place and in a position where the law imposed upon defendant the duty of keeping its premises in a safe condition for his protection.

The following charges were refused to defendant: (1) The affirmative charge.

(5) Under the undisputed evidence in this case, plaintiff was unlawfully upon defendant's premises, and de-

fendant owed him no duty, except not to injure him wantonly or intentionally.

(Y) Plaintiff in no event can recover anything more than a nominal amount for the loss of his time and expense attending his illness.

(Z) No authority given to use said platform would bind the company to keep said steps in good condition for one who was not there for business in connection with the company, or in connection with the shipment of cotton or other freight.

(U) If the jury believe from the evidence that plaintiff went upon the platform to talk with Mr. Lindsey on the invitation of Mr. Lindsey as to a land transaction with Mr. Starkey, and defendant had no connection with that transaction, then plaintiff was not there on any express or implied invitation of defendant, and as a matter of law defendant had the right to request plaintiff to leave the platform.

LAWRENCE E. BROWN, for appellant.

MILO MOODY and S. S. PLEASANTS, for appellee.

THOMAS, J.—Appellee went from Scottsboro with one Starkey to see a Mr. Lindsey, a merchant and cotton buyer at Leighton, in regard to the purchase of some land. Lindsey was on the platform erected and maintained by appellant near its combination freight and passenger depot, where he was engaged in marking and weighing his cotton delivered for shipment over appellant's railroad; and he requested appellee to come onto the depot platform, to talk with him of a business matter as he shipped his cotton. The cotton platform was about five feet high and was entered upon by one set

of steps. By these steps appellee and Mr. Starkey ascended; and after speaking with Lindsey, appellee started from the platform, and, as he placed his right foot on the top step, the steps gave way and he was thrown to the ground, sustaining serious physical injury.

A large quantity of cotton was handled, before and at the time, out of Leighton, and all of it was shipped by way of appellant's railway line. The delivery was upon this platform, and when appellant's agent was notified that cotton was ready for shipment, he came from his office at the depot, checked over the cotton, and issued to the shipper bills of lading therefor. The witness King, in response to the question by the plaintiff, "Tell the jury how the platform was used; what was it used for?" answered: "To weigh cotton; to buy cotton on. We frequently buy cotton on the platform. * * * I saw Mr. Lindsey that day buying cotton on the platform and getting it ready for shipment. Permission was not gotten from any one because all the cotton that went upon that platform was to be shipped. The bill of lading was gotten from the agent in the office in the depot. He would come out on the platform and count the cotton if he thought it was necessary. The public generally went on that platform to weigh cotton."

Witness was then asked, "To what extent was that platform used along about that time by the public?" and he answered: "We weigh and mark all the cotton handled at that point on that platform. * * * I don't know how many people I saw on the platform that day Bates was injured; my recollection is that it was a pretty busy day. Lindsey was there buying cotton, and I was there buying cotton, and there were three or four others, and a big day like that there is a good

many men on the platform. Sometimes we have a dozen, sometimes maybe 40; a busy day like that, there might have been 30 or 40 men, and there might not have been more than 20."

The evidence further showed that it was and had been the custom to place cotton on the platform for shipment, and that the agent only checked up the cotton and issued bills of lading therefor, when the same was ready for shipment; that Mr. Bibb, appellant's agent at Leighton, was on the platform "loading cotton nearly every day;" and one witness stated that: "During the cotton season the agent was on the platform several times a day. He would come up the steps.

The last-mentioned witness also testified that not very long before Bates was hurt the agent helped witness down off that platform and told him the steps were loose, to look out; that on the day of appellee's injury the steps were broken loose from the platform and just set up there, and had been that way several days.

The evidence showed that many wagons had approached the platform, in the delivery of cotton, during the season, before the accident in question, and that they frequently ran against the steps and knocked them loose from the platform, and that at the time of the accident the steps were not fastened to the platform with sufficient security to prevent them from falling when appellee stepped upon them.

The appellant offered a diagram, made a part of the bill of exceptions, showing that this shipping platform was located 100 feet from the main depot and along its tracks, that it was 75 by 100 feet in area, and that it was approached on one side by the railroad track, and on the other by the street or public road. This structure was a part of the depot facilities for receiving and

[Southern Railway Co. v. Bates.]

shipping cotton over appellant's road. The evidence is without conflict that Mr. Bibb, the agent of the railway company at the time of the accident, was not on or about the platform where Mr. Bates was injured.

Was appellee, at the time of the injury, a trespasser, or was he a person for whose protection and safety, while a visitor, the company was bound to exercise ordinary care and prudence in the maintenance of its premises?

(1) There was no error in overruling defendant's objections to the several questions asked the witness King. An owner may, without protest or objection, permit his premises to be used by the public so long and in such manner as that they may reasonably presume that he will give some warning or notice of any change in the condition thereof which would render unsafe a continuance of such use. If, under such circumstances, and with knowledge of the same, he should place or leave some dangerous structure or instrument or defect in the way, building, platform, or premises so used, from which he might reasonably apprehend danger or injury to those accustomed to such use, he could not claim exoneration from liability in case injury should occur. The law imposes a duty on him to keep his premises in a safe condition for those who are permitted to come there.—*Harriman v. Railway Co.*, 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; *Bellefontaine v. Snyder*, 18 Ohio St. 399, 98 Am. Dec. 175; *Barry v. N. T. C. Co.*, 92 N. Y. 289, 44 Am. Rep. 377; *Davis v. C. & W. Co.*, 58 Wis. 646, 17 N. W. 406, 46 Am. Rep. 667; *Bransom v. Labrot*, 81 Ky. 638, 50 Am. Rep. 193; 1 Addison on Torts, 511; Thompson on Neg. 305; *Graves v. Thomas*, 95 Ind. 361, 48 Am. Rep. 727; *Campbell v. Boyd*, 88 N. C. 129, 43 Am. Rep. 740.

The rule is illustrated by many English courts, and it may be well to examine some of them. The decision in the early case of *Corby v. Hill,* 4 C. B. (N. S.) 556, 562, is placed on the ground of an implied invitation. And it is noteworthy that Willes, J., suggesting the necessary averments in a declaration in such cases, wholly omits any mention of an invitation, implied or otherwise. The justice concludes his opinion by the statement: "The defendant has no right to set a trap for the plaintiff. One who comes on another's land by the owner's permission or invitation has a right to expect that the owner will not dig a pit thereon, or permit another to dig a pit thereon, so that persons lawfully coming there may receive injury."

In the later case of *Heaven v. Pender,* 11 Q. B. D. 503, it is said: "A more accurate and satisfactory ground of recovery, embracing all cases of implied invitation, is to be found in the proposition that whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary prudence would recognize that, if he did not use ordinary care and skill in his own conduct with regard to these circumstances, he might cause danger or injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

In *Gibbs v. Trustees, etc.,* 11 H. L. Cas. 686, the opinion delivered by Mr. Justice Blackburn, it was said: "For a body corporate never can either take care or neglect to take care except through its servants; and it seems clear that if they by their servants had the means of knowing that the dock was in an unfit state, and were negligently ignorant of its state, they did neglect their duty and did not take reasonable care that it was fit."

[Southern Railway Co. v.' Bates.]

In Pollock on Torts, p. 417, it is declared that: "It is not necessary that there should be any direct or apparent benefit to the occupier for the particular transaction," to subject the owner to liability for not maintaining a safe place.—*Holmes v. N. E. R. Co.* (1869-71) L. R. A. 4 Ev. 254; *Buchell v. Hickisson,* 50 L. J. Q. B. 101.

The general rule is well stated by Judge Cooley, and quoted with approval by Mr. Justice Harlan in *Bennett v. L. & N. Ry. Co.,* 102 U. S. 577, 580, 26 L. Ed. 235, as follows: "Where one 'expressly or by invitation invites others to come on his premises, whether for business or *any other purpose,* it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit."—*Ella v. Boyce,* 112 Mich 558, 70 N. W. 1106; *Carleton v. F. I. & S. Co.,* 99 Mass. 216; *Cogdell v. R. Co.,* 124 N. C. 302, 32 S. E. 706; *Sweeny v. O. C. & N. R. Co.,* 10 Allen (Mass.) 368, 87 Am. Dec. 644; Cooley's Torts, §§ 604-606.

An implied invitation exists in favor of attending friends of passengers, hackmen, porters, etc., and all those who may rightfully use the platform, depots, and landing places. In *Tobin v. Portland Co.,* 59 Me. 183, 8 Am. Rep. 415, it was held that a railroad corporation was liable to a hackman for an injury received while carrying a passenger to its depot for transportation, by stepping, without fault, into a hole in its platform. The Chief Justice said: "The hackman was there in the course of his business; but it was a business important to, and for *the convenience and profit* of, the defendants."

The rule was extended in *Hamilton v. Texas P. Railway Co.,* 64 Tex. 251, 53 Am. Rep. 756, to protect not only the passengers, but those who are on the premises for the purpose of welcoming or bidding farewell to passengers. In *Langan v. I. M. & S. R. R. Co.,* 72 Mo. 392, it was declared that, for the safety of a person at the station helping off a friend with his trunk, the company was bound to use due care, and likewise for that of parties speeding and welcoming friends at railroad stations.—*Lucas v. N. B. R. Co.,* 6 Gray (Mass.) 64, 66 Am. Dec. 406; *Keokuk P. Co. v. Henry,* 50 Ill. 264; *Doss v. M. R. Co.,* 59 Mo. 27, 21 Am. Rep. 371; *Langan v. St. Louis Co.,* 72 Mo. 392. Chief Justice Graves, in *McKone v. Mich. Cent. R. R.,* 51 Mich. 601, 17 N. W. 74, 47 Am. Rep. 596, said: "The plaintiff was not a trespasser. His occasion was not only lawful, but it was obviously within the license which the company had extended to the public. * * * The company was bringing his wife to him, and he went to receive and protect her. Had his errand been to receive a bale of goods, or a horse, no one will doubt that he had all the rights of a customer. * * * The case should have been submitted to the jury."

A party going on a platform to read a notice for another party of stock killed by trains, and who was injured by a defective plank, was held entitled to recover in *St. L., I. M. & S. R. Co. v. Fairbairn,* 48 Ark. 491, 4 S. W. 50. In *Klugherz v. St. P. Ry. Co.,* 90 Minn. 17, 95 N. W. 586, 101 Am. St. Rep. 384, one went upon the station grounds, in good faith, in pursuance of the purpose of meeting on a matter of business a Mr. Bates, who he believed was to take the train; and it was held that the company owed him the duty of ordinary care, and the maintenance of safe premises, and that he was

entitled to recover for injuries. The learned justice said: "We are unable to see why the duty of the railroad company to the public should be *confined to those having strictly business relations with the company.* There is no reasonable distinction between the right of a person of escorting another to a departing train, and the right of one who goes there for the purpose of talking with a departing person on a business matter."

The same rule was recognized in *Sullivan v. Minn. Ry. Co.,* 90 Minn. 390, 97 N. W. 114, 101 Am. St. Rep. 414. The servant of an independant contractor, and the servant of a consignee of goods engaged in unloading them, have been held to be on the premises of the owner and the common carrier respectively by invitation.—*Dallas Mfg. Co. v. Townes,* 148 Ala. 146, 41 South. 988; *Cogdell v. W. & W. R. Co.,* 124 N. C. 306, 32 S. E. 706; *Merriweather v. Sayre Mfg. Co.,* 161 Ala. 441, 49 South. 916. That the agent's wife was a licensee, who was entitled to protection by the company, was held in *Croft v. Chicago Ry. Co.,* 132 Iowa 687, 108 N. W. 1053.

(2) It is well settled in this state that if the occupier of premises, either directly or by implication, induces another to come upon them, he thereby assumes an obligation that such premises are in a reasonably safe condition, so that the person there by his invitation shall not be injured by them, or in their use for the purpose for which the invitation was extended.—*Alabama Steel & Wire Co. v. Clements,* 146 Ala. 259, 40 South. 971; *O'Brien v. Tatum,* 84 Ala. 186, 4 South. 158; *Montgomery & Eufaula Ry. Co. v. Thompson,* 77 Ala. 448, 54 Am. Rep. 72; *Carleton v. F. I. & S. Co.,* 99 Mass. 216; *Anderson v. S. T. I. Ry. Co.,* 36 Wash. 387, 78 Pac. 1013, 104 Am. St. Rep. 962; *Davis v. C. C. Soc.,* 129 Mass.

367, 37 Am. Rep. 368. In *Lawrence v. Kaul Lumber Co.,* 171 Ala. 300, 55 South. 111, Mr. Justice SOMERVILLE says: "It is to be noted that 'invitation,' in the sense in which it is  \*  \*  \*  commony used and defined by law writers in the connection, is a term of considerable breadth, and includes, not only express invitation, but the invitation that may be implied from custom, usage, or conduct on the part of the carrier, or its·· servants, if notorious or actually known to the carrier or its alter ego.—*A. G. S. Ry. Co. v. Godfrey,* 156 Ala. 202, 218, 47 South. 185, 130 Am. St. Rep. 76; *Brown v. Scarboro,* 97 Ala. 316, 322, 323, 12 South. 289."

(3) Upon the question of implied invitation, based on the known custom or usage of the defendant or its agents, pertinent testimony may be introduced on the trial; and the issue made by the pleadings in the case before us was one of fact for the jury to determine.

(4) Against defendant's objection questions were propounded by the plaintiff to several witnesses, tending to prove the custom, before and at the time of the injury, in regard to the use of the platform, and also to establish its condition and the condition of the steps leading thereto. The court properly permitted the questions to be answered.—*Union Pac. Co. v. McDonald,* 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; 6 Thompson on Negligence, § 7889.

Appellant's counsel selects, as his two leading authorities, Thompson on Negligence, § 1004, and *Manning, Adm'r, v. C. & O. R. R. So.,* 36 W. Va. 329, 15 S. E. 81, 16 L. R. A. 271, 32 Am. St. Rep. 859. Mr. Thompson bases his statement of the rule on a case where a crowd of the curious or pleasure-seeking public was assembled at the railway station to witness the arrival of the President of the United States (*Gillis v. Pa. Co.,*

59 Pa. 129, 98 Am. Dec. 317), and on that of the *friendly visitor* to the telegraph operator in *Manning, Adm'r, v. C. & O. R. R. Co., supra.* This is but a restatement of the old rule declared in the case of a "mere visitor," in *Southcote v. Stanley,* 1 H. & N. 247, that a *mere friendly visitor* has no right of action for an injury that occurred to him while a mere voluntary licensee. The reason stated for the rule was that a *mere voluntary licensee* takes the premises subject to concomitant risks and perils. The editor of Lawyers' Reports Annotated, in his notes on *Manning's Case,* says: "The above case seems to come fairly within the rule applied; nevertheless the application of the rule to the facts of this case is not without an appearance of hardship that suggests the question whether the rule has not some limitation."

The distinction between the cases cited in appellant's brief and the instant case is found in the fact that appellee here, Mr. Bates, was not *a mere voluntary licensee.* He was on appellant's platform, not one of a curious crowd to witness the arrival of the President, or to escape from a storm, or to pay a friendly visit to the telegraph operator, but was there by the express invitation of Mr. Lindsey, a shipper, and the implied invitation of appellant, to see Mr. Lindsey, that the transaction of shipment of cotton over appellant's road might be facilitated.

The limitation to the rule, hinted at by the editor of L. R. A. in his notes to *Manning's Case,* is thus stated in 29 Cyc. 455: "There must be a mutuality of interest, * * * although the particular thing which is the object of the visit may not be to the benefit of the occupant."

Appellant's counsel cites three other cases, which we will examine:

*Railroad Co. v. Cox*, 66 Ohio St. 276, 64 N. E. 119, 90 Am. St. Rep. 583, was the case of a licensee riding on a freight engine contrary to rules. Here it is observed that, although he was invited by the conductor to ride on a freight train, the plaintiff, accepting the invitation, was riding on the engine, and not in the caboose, a safer place.

*Watson v. Manitou & P. P. Ry. Co.*, 41 Colo. 138, 92 Pac. 17, 17 L. R. A. (N. S.) 916. In this case the court simply declared that when one goes in the nighttime on a company's premises for a private purpose, and does not keep within the light reflection of the house, he is a mere licensee, and not entitled to the protection of a safe place. However, Mr. Justice Bailey, for the court, observes: "A railroad company may not be made to respond in damages to every person who may chance to be injured upon its grounds. One who goes to the station house of a railroad company, not for the purpose of any business, or to meet expected friends, or to see others depart, but as a mere spectator, for his own pleasure and convenience, is there at his own risk and peril, and cannot recover damages for personal injuries received in consequence of a defective platform or station grounds. * * * It is sometimes difficult to determine whether the circumstances make a case of 'invitation,' in the technical sense of that word, as used in a large number of adjudged cases, or only a case of mere license. 'The principle,' says Mr. Campbell, in his treatise on Negligence, 'appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mutual pleasure or benefit of the persons using it.'"

*Deakin v. I. C. R. Co.,* 127 Ill. App. 258, is the third authority relied on by appellant's counsel, where the learned justice states that: "The plaintiff was using the track as a passageway to run on an errand for her mother."

In *Alabama Great Southern Railroad Co. v. Godfrey,* 156 Ala. 202, 219, 47 South. 185, 190 (130 Am. St. Rep. 76) Mr. Justice Haralson, discussing the term "invitation," said: "That the person injured does not act merely for his own convenience and pleasure, and from motives to which no act or sign of the owner or occupant contributed.  *  *  *  A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability. But if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition, suitable for use, and for a breach of this obligation he is liable in damages to a person injured thereby."

The only attempt in this state to classify those persons to whom is due the duty to exercise ordinary care and prudence to render the premises reasonably safe for the visit to "railroad station property" was made by Chief Justice Stone in *Montgomery & Eufaula Railway Co. v. Thompson,* 77 Ala. 448, 457, 54 Am. Rep. 72, who includes under the general head "those who have business with the railroad," "attending friends and protectors, who accompany friends to the train, to aid them in getting on, in procuring tickets, and in checking baggage, and *kindred services.*" And he states that: "To persons filling these classes, the railroad corporation owes special obligations of duty, different from those due to the general public. While the former come

by invitation, express or implied, the latter are *mere pleasure seekers, or are prompted by curiosity.*"

The facts of that case show that the plaintiff was a passenger at the depot where the injury occurred. The learned Chief Justice did no more than declare the rule as to those who were passengers or prospective passengers and their attendants. Yet he did declare a class to whom the duty does not apply—"mere pleasure seekers," or such as "are prompted by curiosity" to come on the company's property.

In *Alabama Great Southern Railroad Co. v. Godfrey, supra,* where one discharged as a passenger at defendant's depot received injury in going therefrom, Justice Haralson defined the extent of the term "depot grounds," reaffirming *Montgomery & Eufaula Railway Company v. Thompson, supra,* and quoting the passage above set out from Mr. Justice Harlan, in *Bennett v. Louisville & Nashville Railroad Co., supra.*

It is clear, from the definition given of "invitation" and "license," that the underlying principle of each case is the rule of justice and reason, to protect from traps and pitfalls all who have the right to be at a given place, to be applied to the facts of the case in hand. An invitation to come on premises may be inferred where common interest or mutual advantage prompts it.—*Foster v. Portland Gold Mine Co.,* 114 Fed. 613, 52 C. C. A. 393; *Tennessee Coal, Iron & Railroad Co. v. Burgess,* 158 Ala. 519, 47 South. 1029.

(5) Here was the cotton platform, a part of the depot facilities, being used as the place of the public buying and shipping of cotton at Leighton, and all the cotton bought there was shipped over appellant's railway. It was to the interest of appellant to invite and permit cotton buyers to buy, weigh, and mark cotton on its plat-

form, and to transact business with their associates. It had by custom become the place, not only for such shipments, but for dealings with the public by those engaged in the buying and shipping of cotton. If the appellee had come onto the platform to speak with Lindsey about *cotton,* no insistence could be made that he was not protected by the rule of ordinary care for a safe place. How is the case changed, if appellee came at Lindsey's request, to speak with him of some other business? If appellee's coming to speak with Lindsey obviated the necessity of Lindsey's suspending his activities in shipping cotton over appellant's road, to go away and speak with appellee, then certainly the railroad company had a material interest in his visit. There was some mutuality of interest, between appellant and Lindsey and appellee, in the business in hand, although the *direct object* of the visit held no such interest for appellant. Its interest was subserved by the noninterruption of shipments of cotton over its line.—29 Cyc. 455. If Mr. Lindsey and a cotton seller and the appellee, Bates, had all been on the steps at the time of their fall by reason of said defective condition, and all three had received injuries thereby, could it be held that Mr. Lindsey and the cotton seller had protection from traps and pitfalls, but that appellee, Bates, who was there by invitation, must innocently suffer? Would not such a decision be an anomaly of judicature? Neither would be a trespasser, or rightfully of the class designated by Chief Justice Stone in *Thompson's Case, supra,* as mere pleasure seekers or persons prompted by curiosity to be there. The reason for the rule must prevail.

The court committed no error in overruling the demurrers to count 2 of the amended complaint, nor in re-

fusing the several written charges requested by the defendant.

The case is affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.