NEW ORLEANS & N. E. R. Co. *v.* BROOKS.

(Division B.   Feb. 10, 1936.)

[165 So. 804.   No. 32022.]

**Heidelberg & Roberts**, of Hattiesburg, and **Parker & Shivers**, of Poplarville, for appellant.

**F. R. Horne,** of Jackson, **Grayson B. Keaton,** of Pica-yune, and **Hall & Hall,** of Columbia, for appellee.

Argued orally by **Rowland W. Heidelberg** for appellant, and by **Lee D. Hall**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellee brought this action against appellant in the circuit court of Pearl River county to recover damages for an injury received by him in falling through a depot platform which he claims was negligently maintained by appellant at its station at Carriere. He recovered a judgment in the sum of one thousand five hundred dollars, from which appellant prosecutes this appeal.

Carriere is an unincorporated village through which appellant's line of railroad runs north and south. Appellant's depot there is located on the east side of the main line of railroad and consists of four rooms; the northeast room is the colored waiting room, the north-

west the white waiting room, the next room south is the office for the agent, and the next south of that is the freight room. The entrance to the colored waiting room is on the north, to the white waiting room and to the agent's office on the west. There are no doors in the building on the east, except to the freight room. There was a platform the entire length of and adjoining the building on the east, and connected therewith was a cotton platform extending about fifty feet on the south end of the building. This platform had been out of use by appellant for some years because cotton was no longer shipped from the place, and after appellee's injury it was torn down. The entire platform to the south and the east was about four feet from the ground; the height of the floor of a freight car. On the west side and adjoining appellant's right of way is highway No. 11 running north and south; next, going east, are two side tracks, next appellant's main line; between that and the depot is a walk about fourteen feet wide made of crushed slag with concrete curbs and extending some distance north of the depot and to a point about fifty feet south thereof; to the east of the depot and adjoining appellant's right of way is another public highway running north and south, and between that and the depot is another side track. The situation, therefore, with reference to the location of the depot, the main line, the side tracks, and the public highways is this: North and south public highway adjoining the right of way on the west, and going east, two side tracks, the main line, the slag walk, the depot, the platform attached to the depot on the east and the south, the side track, and then a public highway running north and south adjoining the right of way. A short distance to the north of the depot is a passageway called in the evidence indifferently a street or road; this is an east and west passage connecting the two public highways and the only one provided for that purpose, and is something like fifteen feet from the north

end of the slag walk. This is the way provided for all persons coming from the east having business at the depot. There were steps leading up on the south end of the platform. For years many persons going from the east to the west went up these steps, instead of going to the connecting way on the north, and either proceeded west on the platform at the south end of the depot then down on the slag walk, or north on the east platform, thence through the freight door if open, if not, to the northeast corner of the building, thence on the walk along the north end to the slag walk. The platform was on piers on which were sills, then there were sleepers four inches thick by ten or twelve inches wide laid on the sills north and south at proper distances apart, then east and west the flooring was laid on the sleepers, and where two pieces of flooring met each occupied about two inches of the sleeper. The flooring was about two inches thick and the usual width used on such platforms.

Appellee lived a short distance southeast and in sight of the depot. He was injured in the morning; the evidence leaves it in doubt about the hour. Dr. Horn had ordered some paint shipped to him at Carriere; he had agreed to let appellee have part of the paint and had authorized him, when it came, to receipt for it and take it out of the depot. Appellee left his home on that mission. He went up the steps at the south end of and onto the platform, and during his progress stepped on the end of one of the boards which broke through causing his foot and leg to go through the flooring, resulting in a rupture which was painful, and, the evidence tended to show, was permanent. The top of the sleeper on which the end of this board rested was rotten, and on account of that condition, when appellee stepped on it, it crushed off causing the board to go down.

Appellant's main contention for reversal is that appellee was a mere licensee and not an invitee, and there-

fore its only duty to appellee was not to cause him injury through willfulness or gross negligence. It is true, as contended by appellant, that the connecting road on the north was the one provided for approach to the depot from the east, where appellee resided; still there was abundant evidence that the way appellee approached the depot when he was injured was in common use and had been for years, and that appellant had knowledge of that fact. Appellant had posted no warning of any kind that it should not be so used. In other words, the public from the east had two ways of approaching the depot; one was the connecting road on the north, and the other, up the steps at the south end of the platform thence over the platform, the way appellee went. As above stated, both ways had been in use for years, and appellant knew of it.

What was appellant's duty with reference to maintenance of the way of approach over the platform? A landowner is subject to liability for bodily harm to a business visitor caused by a dangerous natural or artificial condition thereon when he knows, or by the exercise of reasonable care could discover, the condition. If the landowner is a public utility it should give adequate warning of the danger to enable the visitor to avoid harm without relinquishing any of the service which he is entitled to receive. Applying this principle to the case of a railroad and an injured passenger, the fact that there is an alternative safe approach would not relieve the company of liability if the danger of using the unsafe approach was due to a condition of which the passenger was ignorant but which the company knew or should have known and which it had no reason to expect the passenger to discover. A. L. I., Restatement, Torts, secs. 343 and 347. Although the following cases are not in point on their facts, the principles they lay down are supporting: Lepnick v. Gaddis, 72 Miss. 200, 16 So. 213, 26 L. R. A. 686, 48 Am. St.

Rep. 547; S. H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858, Ann. Cas. 1918E, 310; Western Union Telegraph Co. v. Blakely, 162 Miss. 854, 140 So. 336; Allen v. Yazoo & M. V. Railroad Co., 111 Miss. 267, 71 So. 386; Cassady v. Texas & P. R. Co. (La.), 60 So. 15; Bennett v. Louisville & N. R. Co., 102 U. S. 577, 26 L. Ed. 235; Alabama G. S. R. Co. v. Godfrey, 156 Ala. 202, 47 So. 185, 130 Am. St. Rep. 76; Southern R. Co. v. Bates, 194 Ala. 78, 69 So. 131, L. R. A. 1916A, 510.

Appellant argues further that appellee was a mere licensee because he was approaching the depot on business with the company before business hours; in other words, at a time when he knew he could not transact any business with the company. The evidence showed without dispute that the office hours at Carriere began at eight A. M. and not before. Appellee left it uncertain in his testimony whether his approach to the depot was before or after eight o'clock; however, he was certain that at the time he approached to ascertain whether the shipment of paint had come, he saw Donald, the agent of the company, at the north end of the depot, and knew that if he were there he would be able to accomplish his purpose. Donald testified that he was not there earlier than eight A. M. Taking appellee's statement as true, we think he was a business visitor at the depot and not a mere licensee; therefore, appellant owed him the duty of reasonable care.

Appellant contends that no negligence was shown in the maintenance of the platform, that there was no evidence either showing or tending to show that appellant knew of the rotten condition of the sleeper or would have known of it by reasonable inspection. The platform had been built twenty odd years before the injury. The evidence tended to show that the rotten condition of the sleeper could have been seen from underneath the platform, and also through the cracks between the flooring when looking down from the platform. We think

the evidence was sufficient to go to the jury on this issue. Knowing that the public used the platform as a way of approach to the depot, it was the duty of the appellant to use due care to see that the way was reasonably safe.

Appellee had the piece of flooring (or thought he had) and the sleeper that caused his fall brought to the courthouse where the case was being tried and put in an adjoining room to the courtroom. In order to be conveniently hauled to the courthouse, the sleeper had been cut into four pieces. While he was testifying he stated those facts, and thereupon his attorney offered the sleeper and board in evidence. The court neither voluntarily ordered the jury to retire, nor was their retirement requested by either side, but appellant's attorney immediately proceeded to question the witness with reference to the offered evidence, and, when he finished, stated this to the court: "We have a motion we want to make and ask that the jury be retired." The jury was thereupon retired, then appellant's attorney objected to the introduction of the evidence, which objection was sustained by the court. The jury was then returned and the court made this statement: "With reference to the material that the plaintiff offered to present to the jury, the court has sustained an objection to it being introduced, and the jury will therefore disregard any question asked or any statement made by any witness in answer to any question asked by counsel with reference to any material that may be on the outside of the courtroom in the adjoining room; just disregard it entirely."

Appellant's attorney then moved the court that a mistrial be entered under the principles laid down in National Box Company v. Bradley, 171 Miss. 15, 154 So. 724, 157 So. 91, 95 A. L. R. 1500. It was held in that case that a request of the court that the jury view the premises should not be made in the presence of the jury and should be overruled without objection from opposing

counsel, except where both sides join in the motion; that a refusal to retire the jury after request whereby the opposing party is forced to object to the requirement that a view of the premises be had by the jury is error, regardless of whether the view is made. We are of opinion that those principles have no application here. There was no effort on the part of appellee to have the jury view the premises (the platform) as it existed when the injury occurred. As above stated, between the time of the injury and the trial the platform had been torn down and scrapped. Appellee's effort was to bring parts of the premises to the jury. It was held in the Box Company case that a view of the premises by the jury should not be allowed when there has been material change in the premises. The evidence was without conflict that the sleeper was rotten and that its rotten condition caused the board to break through and injure appellee when he stepped on it. We are unable to see how either side could have been helped or prejudiced by the refusal of the court to admit in evidence the sleeper and the board.

It follows from these views that the court committed no error in instructing the jury on behalf of appellee and refusing certain instructions on behalf of appellant.

Affirmed.