NATIONAL BOX CO. *v.* BRADLEY...

(Division B.   May 14, 1934.)

[154 So. 724.   No. 31246.]

16

(Division B.   October 22, 1934.)

[157 So. 91.   No. 31246.]

18

For former opinion, see 154 So. 724.

**Whittington & Brown,** of Natchez, for appellant.

**R. L. Corban, Jr.,** of Fayette, and **Engle & Laub,** of Natchez, for appellee.

Argued orally by **L. A. Whittington,** for appellant, and by **S. B. Laub,** for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

Charlie Bradley was employed by the appellant, National Box Company, and suffered a serious injury by having his clothing caught on a part of the machinery, dragging him onto the machine, and inflicting the injury. His theory of how the injury occurred was that there was a set screw protruding from one inch to one inch and one-half, and that the apron which he wore in his employment caught on said set screw and pulled him onto the rapidly revolving shaft, resulting in his injuries. He testified that the shaft was about two and one-half feet above the floor, and that this set screw should have been either covered or sunk, or a different type of set screw used, and that it was customary in business of this kind to have such set screws sunk into the shafting, or covered, or fixed in such manner that employees working around such screw would not be caught in the revolving shaft, and that he had worked at a number of places where covered or sunken screws were used, and that was the usual and proper way for such machinery to be operated. He went to work on the morning of the injury at seven o'clock, and was injured at fifteen minutes past seven o'clock.

Witnesses for the appellant testified and the appellant pleaded that the injury was occasioned by the appellee standing upon a block by the machinery with his hands

lifted up for another employee above him to trim his finger nails, and that the appellee was not, at the time of the injury, employed in and about his master's business. It was also the theory of the appellant that the machinery was four and one-half feet above the floor, breast high to the employees.

The appellee's employment was to assist in handling and fixing cuts of wood from which veneer was to be made over and onto the knives which cut strips from logs; these logs being cut into lengths of approximately three feet.

There was testimony to the effect that the nurse employed by the appellant to give first aid to injured employees rendered first aid to the appellee, called a physician, and took appellee's statement, in which statement she claimed that he stated he was standing on a block leaning over the machinery having his finger nails trimmed. The appellee denied this statement.

When the evidence was concluded, the appellee made a motion for the court and jury to go to the plant of the box company and inspect the place where the injury occurred and the machinery which inflicted the injury. The machine which inflicted the injuries had been removed from the place where it was operated, another machine had been installed, and the situation and condition of the place where the injury was inflicted were not the same as when it occurred. This motion was objected to and overruled by the court. The attorneys had gone into a room to prepare the instructions in the case when the members of the jury asked the special judge presiding, the regular judge having recused himself, to be permitted to go and view the place where the injuries occurred. The attorneys were called into the room and the jury's request communicated to them, and, in view of this request, the judge granted the motion. At the time this was done, no objection was made. Vehicles or auto-

mobiles were secured, and the jury was divided and placed in three cars with a deputy sheriff in each car, the attorneys for the appellee going in one car, with the trial judge and the stenographer, and the attorneys for the appellant in another car, but on this trip the circuit clerk did not go with the court. In granting the request to view the place, the trial judge told them that no testimony would be taken at the place, nor until the jury was returned to the courthouse. No objection was made at the time in court, but one of the attorneys for the appellant, at some time during this trip, communicated privately to the trial judge that he would take objections, and on the return to the courthouse dictated into the record his objections to the judge's ruling permitting a view of the place of the injuries, including in his objection the complaint that the order did not permit testimony to be taken at the appellant's plant showing the location and condition of things at the time of the injuries.

The first question to be determined, and the one which we think is controlling here, is whether it was error, and, if so, whether it was reversible error, for the judge to make the order permitting the jury to view the plant and machinery.

It appears that the circuit judge and deputy sheriffs who attended court were present with the jury, and that the jury viewed and discussed among themselves somewhat the situation of the plant, both as to the place of the injury and as to the machinery. The place and the machine were pointed out by some employee and one attorney for the defendant, but no questions were asked and no objections made by any person.

We think it was improper for the judge to permit the jury to go to the place of the injuries, because it was not in the same condition as at the time of the injuries. However, this is not reversible error because no objection

was made at the time, and we think it was necessary for this objection to be made in open court, at the time the order was made. The parties litigant have the right to know of objections made in a case, and to be informed of all proceedings as they take place, and it is not permissible for one of the parties privately to state to the judge that he will object later. In the case before us, if it was not agreeable for the jury to view the plant and machinery, objections thereto should have been made in open court, where all the parties concerned could be informed of such objections and the reasons therefor. A party might change his attitude in the light of objections, and might not be disposed to take the risk involved.

The view of the place and the machinery being, in legal effect, agreed to, it would afford an opportunity for the jury to better determine the conflicts in the evidence. Just how the machinery was set up, and things of that kind, would throw a light upon conflicts in the evidence, although the situation was not exactly the same. In view of the fact that the jury had the advantage of an ocular demonstration of the machinery, the case made for the appellee, plaintiff below, might be strengthened. The evidence for the plaintiff was contradicted by a number of witnesses, and it is argued that the verdict should not be allowed to stand because of such contradictions, and that a peremptory instruction should have been granted because the evidence for the plaintiff was insufficient to sustain his theory. We think the evidence for the plaintiff, if taken as being true, is sufficient to make a case of liability.

There might be some doubt as to whether the judgment should be set aside on account of the weight of the evidence without the view. The rule is to be applied with caution, because the jury is ordinarily the judge of the credibility of the witnesses. Some features of the evidence for the appellant are not very convincing, and,

with the view had by the jury, it might be discredited. We are therefore of the opinion that the evidence is not so overwhelmingly in favor of the appellant as to warrant us in setting aside the verdict on that ground.

It is argued that the judgment should be reversed because the court went to the scene of the accident without having the circuit clerk accompany it, and that this should have been required. It seems to have been overlooked by all parties. The circuit clerk said nothing was said to him about going. Of course the clerk should have accompanied the court and the jury, but this error, not contributing to the result or not resulting in any prejudice to any of the parties, will not be counted as reversible error. No testimony was to be taken, and nothing was done which would have required the presence of the circuit clerk. It was therefore error without prejudice or harm.

We have considered all the instructions, and find no reversible error in them, and the judgment will therefore be affirmed.

Affirmed.

### On Suggestion of Error.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

After the suggestion of error in this case had been considered by the court, appellee was requested to respond thereto, whereupon in addition to the response appellee applied to the trial court, by petition and evidence in support thereof, to correct the court reporter's transcript and to make that record show that in fact no objection was made by appellant to a view of the premises until after the order therefor had been made and the court and jury had made the inspection and returned

to the courthouse, or, if previously made, that it was in such a manner that neither the court nor counsel for appellee heard it or knew of it when made. Section 726, Code 1930, furnishes a simple and adequate method for the correction of the court reporter's transcript of the trial proceedings, and if counsel fail to avail of that simple method, a valid excuse should be offered as a predicate for a petition to correct the record after the transcript has been filed in this court. And, in any event, the application for the correction should be made before the submission of the case to this court. Brown v. Sutton, 158 Miss. 73, 120 So. 820; Id., 158 Miss. 78, 86, 121 So. 835. But this petition to correct the transcript was not presented in the trial court until the case had been decided by this court. It would be intolerable that applications by either party to correct the record should be entertained after decision by this court; and it has been expressly decided that such applications after decision here are too late. Ross v. McIntyre, 53 Miss. 133; Union Motor Car Co. v. Cartledge, 133 Miss. 318, 333, 97 So. 801. The petition and proceedings to correct the transcript are therefore disregarded, and the suggestion of error will be examined solely on the original record.

Appellant again urges that the great or overwhelming weight of the evidence was against the appellee, and that the motion for a new trial raising that question should have been sustained. It may be that, without the view of the place and premises had by the jury, we would have been inclined to reverse this judgment in response to the above-stated contention of appellant; but we are bound by the rule, as stated in Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A. L. R. 167, that where there has been a view or inspection of the place or premises by the jury we cannot reverse on the evidence, if there be any substantial testimony, delivered by sworn witnesses in support of the verdict. We have again carefully ex-

amined the record, and we cannot properly say that there is no substantial sworn testimony in support of this verdict.

In view of the importance in this case, and in most cases, of the inspection of the place or premises by the jury, as regards a review of the case on the evidence on appeal, and of the unfortunate misunderstanding among counsel as to what actually happened in regard to the objections made or sought to be made against the allowance of the inspection in this case, we deem it desirable that we enter upon some discussion of the proper practice as to views or inspections by the court and jury.

Under section 2066, Code 1930, which is the statute dealing with this subject, the trial court is seldom, if ever, obliged to allow a view of the premises, and it would be a rare case that a refusal by the court so to allow, could successfully be assigned here as error; for the statute expressly places such a refusal in the discretion of the trial court. 1 Thompson on Trials (2 Ed.), sec. 883. Nor is the court bound to allow a view because both parties request it or consent to it. There are the considerations of inconvenience, distance, delay, expenses, and the like, which belong primarily to the court to determine and not to the parties, although a party may be heard to urge these matters in his objection. And because a view when taken very nearly divests the appellate court of its power to review the case on the evidence, a request for a view should never be granted unless it appears reasonably certain that it will be of essential aid, not merely of some aid, to the jury in reaching a correct verdict, and that it is distinctly impracticable and inefficient to present the material elements to the jury by photographs, diagrams, maps, measurements, and the like. Nor should a view be allowed when there have been material changes in the place or premises, as was observed by us in our original opinion, and as was the situation in this case. See the citations 64 C. J., pp. 88, 89.

But in order that error in the trial court, in allowing a view and inspection by the jury, may be availed of on appeal, the proper objection must be made in the trial court and before the court and jury have departed to make the inspection, and in such manner that, in open court and in the hearing of the judge and opposing counsel, they may be made aware of the objection then and there made. The court reporter's transcript shows that counsel for appellant did object to the view when counsel for appellee first requested it, and that the court then refused the request; and the trial part of that transcript shows further that when later the jury requested that they be taken to view the scene of the accident, counsel for appellant again objected and that his objection was overruled and the view allowed by the court. But on the hearing of the motion for a new trial the trial judge made a statement, as also shown by the transcript, in which he recites that when the request was made by the jury, he called counsel for both sides into the courtroom "and told them of the request of the jury and stated that in view of that request (he) would sustain the motion for a view. There was no further objection made to this at that time, but the attorney for the defendant stated privately to the court that he expected to renew his objection." And the trial judge recites the facts in regard to the trip in taking the view, and of the return of the court and jury to the courthouse, and his statement continues as follows: "Promptly upon reassembling the attorney for the defendant dictated into the record his objection to the view which is reflected by the stenographer's notes in this case."

It was not sufficient here that appellant objected when appellee made the request for the view, and that objection cannot automatically be brought forward and made to apply to the later request by the jury, for there a material new element had been brought into the question,

in consequence of which counsel for appellant was bound to again object and in open court and in the hearing of the court and of counsel for the other side and before the departure for taking the view, if he intended to continue to insist upon his objection, and to preserve it for review here. We are, therefore, confronted with the necessity to decide whether the court reporter's trial transcript as to the time and manner of the renewal of the objection by appellant is to control or whether the statement made by the trial court upon the motion for a new trial is to prevail.

If this were a new question, we think we would be obliged to say that we must accept here as true the statements of the trial judge of his recollection of the proceedings sought to be reviewed when those statements are positive and definite, as is the case here. The statute above cited, section 726, Code 1930, expressly empowers the trial judge, when errors in the court reporter's transcript are suggested to his attention, to correct them. The trial judge is by the implications of the statute itself placed in a superior station in respect to the court reporter's transcript, and there would be an odd situation if it were otherwise. We think, however, that the rule, as above stated, has already been settled in Gurley v. State, 101 Miss. 190, 57 So. 565; Turner v. State, 121 Miss. 68, 83 So. 404; Humphrey v. Crorow Hardwood Co., 163 Miss. 490, 140 So. 690; so that we must accept as true the statements of the trial judge above quoted.

All the embarrassing misunderstanding and disappointment about this matter could and would have been avoided had the proper practice, in respect to requests for views by the jury, been observed by court and counsel for both sides, and we, therefore, take this as an appropriate occasion, furnished by the state of this record, to add further upon the subject of the proper rules of practice in that regard.

When a party is about to make a request that a view or inspection of the place or premises be had by the court and jury, the party must first request the court to retire the jury. A request that a view or inspection be permitted, should not be made in the presence of the jury, because an objection to the request made in the presence of the jury might prejudice the jury against the objector. As well admitted by counsel for appellee in their brief, "any lawyer of experience in trying jury cases, knows the injury he inflicts upon himself in objecting to a view by the jury." 64 C. J., p. 90. When, without first having the jury retired, such a request is made and in the presence of the jury, the judge may and generally should overrule it—because thus improperly made—and without waiting for an objection from the other side, unless of course the other side immediately join in the request. And when such a request is made improperly in the presence of the jury, and the court does not then and there at once overrule it, because thus improperly made, and the other party does not immediately announce anything as to whether he will or will not join in the request, the judge should, of his own motion, retire the jury, and if he do not, the opposite party must request the retirement, and if upon that request the court still fails to retire the jury and the party then makes his objection to the view, the failure to retire the jury will constitute reversible error, if the evidence be strongly conflicting, whether the order for a view is made or is not made— this because the judge has compelled the party to make his objection in the presence of the jury to his injury as aforementioned. But in order to constitute reversible error, as regards the matter of procedure, the objecting party must (1) make the request for the retirement of the jury, and (2) he must object to the view. The controlling point is that the party must have been obliged, in order to make his objection at all, to make it in the

presence of the jury. Until the objecting party has requested the retirement of the jury, any previous failures to conform to the rules of practice above stated will be considered as breaches of propriety but not as reversible error.

In this case the request upon which the court acted in making the order for the view of the place came from members of the jury in the absence of counsel, and while counsel were engaged in preparing the instructions. In such case, the court, upon calling counsel back into the courtroom and acquainting them with the request, should have retired the jury, of the court's own motion, and before requiring counsel to say anything upon the subject; and upon failure of the court to do this, then the duty became incumbent upon counsel, who expected to object, to request the retirement of the jury, in the same manner and with the same attendant results as if the request for the view had been made by the opposite party in the litigation. In other words, whether the request for the view comes from a litigant or from the jury, counsel who expects to object must, in the first place, request the retirement in order to complain for reversal because of a failure to retire the jury, and he must, of course, in the second place and in any event, make his objection to the view or inspection, in open court, in the presence and hearing of the judge and opposing counsel before the court and jury depart for the premises, in default of which the ruling of the trial court thereon cannot be assigned as error.

Finally, appellant insists that the order for the inspection could not be made by the special judge who tried this case, but only by the regular judge. The record shows that the regular judge was disqualified and that a member of the bar was selected by the parties to hear and determine the cause, as is provided by section 737, Code 1930, and as allowed by section 165, Constitution

1890. When, under those sections, a member of the bar presides, he is empowered to rule upon and determine all pertinent questions arising during the trial of the case, Canal Bank & Trust Co. v. Brewer, 147 Miss. 885, 912, 113 So. 552, 114 So. 127, and this, of course, includes the power to act upon a request for a view by the jury.

Suggestion of error overruled.