ARMSTRONG v. STATE.

(Division B. June 7, 1937. Suggestion of Error overruled July 1, 1937.)

[174 So. 892. No. 32671.]

King & Berry, of Mendenhall, for appellant.

238

**W. D. Conn, Jr.**, Assistant Attorney-General, for the State.

Argued orally by **Ovie L. Berry**, for appellant, and by **W. D. Conn, Jr.**, for the State.

**Ethridge, P. J.**, delivered the opinion of the court.

Appellant, Dudley Armstrong, was indicted, tried, and convicted, in the circuit court of Jefferson Davis county, on a charge of assault with intent to kill and murder one Jackie Williamson, and was sentenced to serve a term of five years in the state penitentiary, from which this appeal is prosecuted.

. The evidence on behalf of the State and that on behalf of the defendant was conflicting. According to the testimony of Jackie Williamson, he and his nephew went to the home of the appellant for the purpose of collecting a debt secured by a lien on a car owned by appellant, and were informed that he was not there; they made a second visit and received the same information. Jackie Williamson made inquiries in the neighborhood and was informed that appellant was at home, and with his nephew Jackie Williamson returned to the home of appellant a third time, and both testified that Jackie Williamson was unarmed. As they drove up to the home of appellant, he called out something which Jackie Williamson says he did not understand, but the nephew said it sounded like he said something about "sticking them up," and the nephew threw up his hands, but Jackie Williamson did not, whereupon the appellant fired a shot from a rifle which went into the

windshield and on to the door of the car about the point where the glass in the door disappears. Jackie Williamson and his nephew then left the car and ran off, and one McRainey, a constable, met them and then proceeded to the point where their car had been left, found the bullet in the door, extracted it, and kept it in his possession until the time of the trial. As the shot went into the windshield, it shattered the glass, and some glass struck Jackie Williamson in the face, but the bullet did not strike him.

The appellant, and a woman who cooked for him, testified that Jackie Williamson and his nephew came to the house of the appellant early in the morning, on the day the shots were fired, and knocked, and appellant went out of the back window and ran off partly dressed; that Jackie Williamson threatened the appellant and made a search for him; that they returned a second time and were told that the appellant was not there, and threatened the woman if she did not show them where the appellant was, and that they broke in the door. The appellant and the woman both testified that Jackie Williamson returned a third time and that the appellant called to them to go ahead, that he was tired of running, and that Jackie Williamson started to get out of his car, and was partly out with a pistol in his hand, and that it was then that the appellant fired the shot. There was some other testimony for the defense by other persons tending to show that Jackie Williamson was armed and had threatened the appellant.

When the State was about ready to close its case, the district attorney requested a view of the car which was then in front of the courthouse. This request was made in the presence of the jury, the defendant objected thereto, but neither party requested the jury to retire, and the judge did not direct the jury to retire or overrule the objection, but the district attorney withdrew his request. The State introduced the bullet found in the car, with proof that its caliber and that of the gun owned

by appellant being the same, and that its condition was the same as when found.

The appellant admitted the shooting, but claimed that he was acting in self-defense.

At the close of the appellant's evidence, the district attorney renewed his motion for a view of the car, stating that it was his purpose to rebut the appellant's testimony, but again he did not request the jury to retire, nor did the court direct the jury to retire, and the court sustained this motion for a view.

After objecting to the view, the appellant and his attorney did not, at first, go to the scene, but the court having ordered the entire court to go, appellant then was brought to the point where the car was situated.

It will be seen that the testimony of all parties was conflicting in reference to Jackie Williamson's position at the time of the shooting, whether he was partly out of the car or not.

We think it was important to inspect the bullet taken from the car and evidence as to its entry into the windshield of the car, and that the action of the court in that regard was fully sustained by the decision in the case of Pearlie Davis v. State, 170 Miss. 78, 154 So. 304.

It is urged that it was error for the court to go to the scene unaccompanied by the appellant, and that the jury had opportunity to view the scene in his absence. We think the case at bar comes squarely within the case of Thomas v. State, 117 Miss. 532, 78 So. 147, Ann. Cas. 1918E, 371, where we held that where a defendant voluntarily absented himself during the trial, he could not complain that error had been committed. In a somewhat stronger case, on its facts, Pool v. State, 120 Miss. 842, 83 So. 273, it was held that where the defendant was in jail, and the district attorney made a few remarks in the opening of his address before discovering the absence of the defendant; sent for the defendant, and repeated substantially what he had said before the defendant was brought before the court, no reversible

error was committed. In the case at bar, nothing was done, according to the record, until the appellant was actually present.

In regard to inspection of the car, the procedure outlined in National Box Co. v. Bradley, 171 Miss. 15, 154 So. 724, 157 So. 91, 95 A. L. R. 1500, was not complied with, and the principle was again discussed in Great Atlantic & Pacific Tea Co. v. Davis (Miss.), 171 So. 550.

The principles which district attorneys, the court, and other attorneys should strictly adhere to were fully discussed in these cited cases, and we do not mean to depart from the rules there announced, but it is not every case where there is a violation of the rules so announced that will call for a reversal. In the last-cited case in 171 So. 550, 552, the court said that, ''It may be that in a case where, looking alone to the sworn testimony taken in the courthouse, leaving wholly aside the evidence taken at the scene, and leaving aside anything which the jury may have observed at the scene, it is manifest that the assignment that the verdict is against the overwhelming weight of the evidence is not well taken, an unauthorized view would not reverse; but there is no such manifest case here.''

As pointed out in these cases, where there is an inspection of the scene by the jury, on conflicting evidence, the power of the court to review the sufficiency of the evidence is seriously hampered, if not thwarted. The rules announced are highly conducive to the attainment of justice and fair trials. The request for a view of the scene should not be made in the presence of the jury, because if made and objected to, the jury might draw unfavorable inferences from the mere fact of objection, if rejected. The district attorney should have first asked that the jury retire before making his request for a view of the scene, so that the opposite party could object without arousing the jury's prejudice, but as stated in the case of National Box Co. v. Bradley, supra, the judge should have overruled the request, and if the dis-

trict attorney makes such a request and the judge does not overrule it, then the attorney for the opposite party should, himself, make a request that the jury be retired, and then after such request, make his objection.

It is difficult to see why attorneys or trial judges should not follow this outlined procedure, and we admonish them to strictly observe it.

But in the case at bar, we do not think it amounts to reversible error, for here the view was important because it was impossible by diagrams and pictures to disclose the position of the car door with reference to the range of the bullet which passed through the windshield, and that such evidence was very helpful to the jury in determining the true facts is unquestionable.

It seems to us that the great weight of the evidence shows that the appellant shot at a time when he was in no immediate danger, even if his own version of the transaction be true. Jackie Williamson had not gotten out of the car in such manner as to do great harm, and the appellant was armed with a high powered rifle, and the law does not permit a person to shoot another to avoid danger that is not immediate and impending.

We are therefore of the opinion that there is no error that would warrant a reversal, and the judgment is affirmed.

Affirmed.