During a luncheon recess, which followed the presentation of evidence and which interrupted arguments of counsel, two male jurors visited the defendant's store on Chapel Street, New Haven, to view a staircase upon which the plaintiff claimed to have sustained injury. Mrs. Quinn, both in her written complaint and at trial, alleged that she entered the defendant's department store, as an invitee, on March 7, 1942; that as she was descending from the second floor to the mezzanine, she was caused to fall by the defective condition of the staircase; and that, in consequence, she sustained painful personal injury. Apparently her claim was favorably regarded by the jury, since it returned a plaintiff's verdict in the amount of $650.
The construction, location and condition of the stairs, on the day of Mrs. Quinn's fall, were highly controversial issues. On the one hand, Mrs. Quinn and witnesses called by her, testified to a dangerous condition allegedly created by a worn tread and a loose nosing, while the defense, through its evidence, attempted to show a condition of reasonable safety.
In the presentation of its case, the defendant offered two photographs made approximately one week before trial, to indicate to the jury the general layout of the store, with particular emphasis on the location of the staircase. These *Page 252 
photographs depicted a well constructed staircase with no apparent defects. It was the claim of the defendant that the photographs represented a condition of safety, existing at the time of Mrs. Quinn's fall and continuing down to the day of trial. Conversely, Mrs. Quinn claimed that repairs were made after her fall, thus creating the favorable view reflected in the photographs.
Further, as the defendant was about to rest its case, a motion was made by defense counsel that the jury be permitted to inspect the premises. This was denied, since the jury then had before it not only the photographs to portray the general physical set-up of the store, but also the evidence of contractors and experts concerning the materials and methods used in constructing the staircase. A personal inspection, it was believed, could add nothing essential to the evidence already before the jury.
A request for a view of the premises by the jury in a personal injury case should never be granted unless it appears reasonably certain that it will be of essential aid, and not merely of some aid, to the jury in reaching a correct verdict, and that it is impracticable to present the material elements to the jury by photographs, diagrams, maps, measurements and the like. National Box Co. vs. Bradley, 171 Miss. 15, 28,157 So. 91, 93.
It is likely that the defense motion to inspect the premises, made and denied in the presence of the jury, furnished the inspiration for the later personal pilgrimage of the two jurors, whose visit is now said to have constituted misconduct, and whose visit constitutes the sole basis of the present effort to disturb the verdict.
In answer to the claim, counsel for Mrs. Quinn says that the motion of defense counsel for an inspection of the premises would not have been made had there been any question but that the jurors, upon reaching the store, would find a well constructed, well maintained and reasonably safe flight of stairs. Moreover, says Mrs. Quinn's counsel, the photographs before the jury spelled out safety and reasonable care. Thus, it is argued, the visit of the two jurors could have had no result other than to inure to the benefit of the defendant, since what was viewed by them was obviously a staircase without *Page 253 
defects. And, adds Mrs. Quinn's counsel, the defendant is in no position to object to the visitation by two jurors — in the light of its motion that the entire jury view the premises.
The settled law of this State is that every instance of misconduct by a juror will not vitiate the verdict. If it does not appear that the improper conduct was occasioned by the prevailing party or any one in his behalf; if the improper conduct does not indicate any improper bias in the mind of the juror; if the court cannot see that the improper conduct either had or might have had an effect unfavorable to the party moving for an arrest of judgment, then the verdict is not to be set aside. Pettibone vs. Phelps, 13 Conn. 445, 450; Burnsvs. State, 64 id. 518, 520.
Applying this test to the present factual situation, there is and could be no claim that the improper conduct was motivated by Mrs. Quinn or anyone acting for her.
Whether the improper conduct created any improper bias in the mind of either of the inspecting jurors is much more difficult of ascertainment. Disclosures of the deliberations of a jury in reaching a verdict are not permitted (Valentine vs.Pollak, 95 Conn. 556, 558; Whipple vs. Fardig, 109 id. 460, 463) and thus it has been impossible for either court or counsel to subject the offending jurors to a searching or revealing examination.
Finally, who is there to say whether the improper conduct had or might have had an effect unfavorable to the defendant? While the circumstances might seem to negative this possibility, in view of the defendant's willingness to have the entire jury view the staircase, nevertheless, a verdict, if it is to represent a just appraisal of the merits of the litigation, should not be allowed to stand in a conjectural and speculative realm. Certainly, this fact is undisputed: the inspecting jurors brought to their consideration of the matter, observations and impressions denied their colleagues. An attempted evaluation of the degree in which these factors influenced the verdict can lead only to a guessing bout. Thus, there is a very real possibility that the improper conduct might have had an effect unfavorable to the defendant. This being so, accepted law-dictates a disturbance of the verdict. *Page 254 
To be sure, Mrs. Quinn will be deprived of a verdict which she and her counsel believe was obtained fairly, legally and without improper influences. Mindful of this deprivation, there is a far more basic principle in issue — the preservation of the purity of trials by jury.
 The defendant's motion in arrest of judgment is predicated on the misconduct of the two jurors. Its motion to set aside the verdict alleges that the verdict was against the evidence and the law. Since the sole claim is that of misconduct, the motion to set aside the verdict, as being contrary to law, would seem to be adequate to secure the desired result.