Stone, Chairman, State Tax Commission v. Taylor Machine Works.

On Suggestion of Error

In Banc. Dec. 13, 1948

(37 So. (2d) 779)

The original and dissenting opinions 36 So. (2d) 137, are as follows:

**Roberds, J.**

The question for decision in this case is whether the wholesale rate of one-eighth of one percent or whether the retail rate of two percent should have been paid by appellee as sales tax on its sales during the years of 1944, 1945 and 1946 of a machine called "Logger's Dream". It paid on the wholesale rate. The Chairman of the State Tax Commission assessed it with the retail rate, which it paid and brought this suit to recover. The trial judge, sitting by agreement as judge and jury, was of opinion the wholesale rate applied, and entered judgment for the taxpayer, from which the Chairman of the State Tax Commission appeals here.

Appellee is a Mississippi corporation domiciled at Louisville, Mississippi. It manufactures and sells the foregoing designated machine. All sales here involved were made to operators of sawmills. Normally, the tax on such sales would have been the retail rate. Section 10108, Code 1942. But, Section 10111, said Code, contains this provision: "Sales of tangible personal property to manufacturers only, of machinery, machine parts, and supplies which are exclusive necessities to processing within this state shall be construed to be wholesale sales when the manufacturer to whom the sales are made is taxable under section 2-b [sec 10107] of this act and the

gross proceeds from such sales shall be taxable at the wholesale rate. Provided, however, that such sales may be classed as wholesale sales only if evidenced by proper and adequate invoices and records.''

Sawmill manufacturers of timber into lumber are taxable under 2-b and the sales here involved were duly evidenced by invoices and records. The narrow and determining question, therefore, is whether said machine, or appliances, is shown by this record to be an ''exclusive necessity'' in the processing by sawmills of timber into lumber.

As applicable to that question, the record and the briefs disclose these pertinent facts: ''Logger's Dream'' is manufactured alone by appellee. Application for patent thereon had been made by appellee at the time of the trial but had not then been issued. The machinery constituting this instrument is mounted upon a truck chassis. Appellee extends the length of the chassis sufficiently to properly assemble, mount and operate the machine thereon. It consists mainly of a power-driven drum, a boom, or lifting apparatus, a number of wire cables of varying length, with levers for manipulation of the device by an operator seated upon the chassis. The cables appear to coil and uncoil about the drum to shorten or lengthen the cable-distance needed to attach the cables to the logs. The logs are either snaked along the ground and deposited where desired or they are raised and placed upon trucks, or other conveyances, to be thereby transported to the sawmill. No logs are placed upon the chassis. It is, therefore, useful in assembling scattered logs into piles or placing them on trucks, tram cars, etc., for transporting to sawmills. It is suitable also for lifting logs from the ground onto the ramp of the mill, from which they may be pushed into position to be sawed into lumber. It is claimed by the manufacturer, and what evidence there is in the record on the subject supports the claim, that this is the most economical and efficient

machine yet devised for assembling logs into piles and aiding in their transportation to sawmills.

It is also adapted for use in lifting other heavy articles, as, for instance, mired down, overturned or ditched automobiles, and is so advertised for that and other purposes.

However, it is disclosed that there are a number of other methods of gathering logs in the woods and transporting them to sawmills, as, for instance, by use of skidders, tram cars, operated on dummy rail lines, caterpillar and other tractors, "snaking" them by horse or motor power, etc.

The price of this machine and chassis is from $2,400 to $2,800. Appellee has sold approximately eight hundred of them, in and out of this State. The number sold in this State is not shown. It is shown that at the time of the trial there were some seven thousand sawmills in Mississippi.

Do these facts show this machine to be an "exclusive necessity" in the process of manufacturing trees into lumber by sawmills in Mississippi within the meaning of Section 10111?

The decided cases are of little help. None of the cited cases deal with the precise situation confronting us. The problem must be solved by reason and logic. One definition of necessary is "Essential to a desirable or projected end or condition; not to be dispensed with without loss, damage, inefficiency or the like; as a necessary tool." Webster's New International Dictionary, Second Edition. It is difficult to lay down any accurate and precise definition by which to test cases. Law writers have tried to do that through the ages, only to have such definitions, accepted as accurate at the time, later changed and altered by subsequent writers. But, as we view the question, a device, to be an exclusive necessity, must be at least one in general use by those engaged in the businss; must be such as not only is indispensable to an efficient, economical and practical prosecution of the particular work,

but for which there is no practical, efficient and satisfactory alternative method, and which is available, in point of original cost and expense of operation, to those engaged in the business. It need not be the only method but one falling within the above definition. Tested by this, we must conclude that Logger's Dream is not an exclusive necessity in the processing of trees by sawmills into lumber. In the first place, it is admitted that a number of other methods are used for assembling logs and transporting them to mills. In fact, until the last three or four years the method under consideration was not known. That method was not used at all. In the second place, it is shown that not one out of seven mills in this State use Logger's Dream. We, of course, know these mills use other methods to assemble the logs at the mills. The cost of Logger's Dream would appear to be prohibitive to operators of small mills. It may in time prove so efficient and become so universally used, and be deemed by those in the business so essential to processing trees into lumber as to properly be considered an "exclusive necessity" for that purpose, but that day has not arrived.

Normally, these sales, in their nature, take the retail rate; the provision for the wholesale rate is an exception. We think the burden of bringing itself within the exception was upon appellee, and that this was not done.

Reversed and judgment here for appellant.

DISSENTING OPINION.

**L. A. Smith, Sr., J.** (dissenting).

With deference, I respectfully dissent from the conclusion of the majority of the Court, and the reasons therefor.

The purpose of the legislature in granting a lower rate of taxation on sales of appliances exclusively necessary to the process of manufacture in a given industry,

was to promote its progress and development in this state. What relates to this exclusive purpose, and necessarily aids and fosters it, is, in my judgment, an exclusive necessity in the process of the precise form of manufacturing involved, within the meaning of the statute under consideration.

The word "necessity" should not, as I see it, be used to halt progress, or to limit it to unprogressive conditions in the process of manufacture. It does not here mean "indispensable" or "universal". Nor should the test be the total number of sawmills in the state as compared to the number of "Logger's Dreams" employed in the lumber industry at the present time, in determining the meaning of "exclusive necessity in the process of manufacture". It is common knowledge that there is great variety in the character of sawmills. They range all the way from portable ones to great plants extending over many acres, and the latter form the type which, due to their permanency and extent of operations, reasonably, the legislature must have had in mind here. Certainly, small moveable mills should be encouraged, but their operators are not generally interested in forward changes in methods or equipment. Their field is limited; their locations temporary; and the production small. Such mills are not ordinarily interested in the progressive use of improved tools, implements or appliances. The large manufacturing establishments, on the contrary, are constantly concerned with improvements in their processes which will promote economy, production, expedition and facility of operation,—otherwise, progress is penalized and halted at the status of small, or portable, or backward mills.

However, laying aside further discussion of that phase of the matter, we find that, by its own concession in the record, the State Tax Commission treats Diesel engines as an "exclusive necessity in the process of manufacturing" lumber. This is a departmental ruling and promotes the purpose of the statute within the purview of

what I have said, supra, in my judgment. This court is not bound by such construction, it is true. But contemporaneous construction of a statute by administrative officers is resorted to by the courts when the statute is ambiguous, as in the case at bar. State v. Grenada Cotton Compress Co., 123 Miss. 191, 85 So. 137. It is an aid to the court, Robertson v. Texas Oil Co., 141 Miss. 356, 106 So. 449, and should be persuasive. L. H. Conrad Furniture Co. v. Mississippi State Tax Comm., 160 Miss. 185, 133 So. 652.

A "Logger's Dream" is certainly as exclusively necessary to the lumber industry as a Diesel engine, it seems to me. There seems no just reason for discrimination between the two. The Department grants the Diesel engine the lower rate of taxation, but refuses it to the "Logger's Dream." This diversity of attitude is inconsistent, while the Department's ruling and construction of tax statutes should be uniform and consistent and free from resulting disparity.

Applying the Department's construction as to the Diesel engine, in view of the authorities cited ante, should lead persuasively to the same construction as to the "Logger's Dream". I think the judgment of the trial court should be affirmed.

**Griffith, C. J.**, joins in this dissent.

On Suggestion of Error.

**J. H. Sumrall**, for appellant.

**W. A. Strong, Jr.** and **Wilbourn & Wilbourn** and **Jack-Young, Daniel & Mitchell**, for appellee.

For appellee:

For appellant:

· Montgomery, J.

This suggestion of error is filed by Taylor Machine Works and challenges the former decision of this court, reported in 36 So. (2d) 137 and not yet reported in our State Reports.

We have before us for construction the last paragraph of Section 10111, Code of 1942, and particularly that part of it using the language "machinery, machine parts, and supplies which are exclusive necessities to processing." The pertinent portion of this statute reads as follows:

"Sales of tangible personal property to manufacturers only, of machinery, machine parts, and supplies *which are exclusive necessities to processing* within this state shall be construed to be wholesale sales when the manufacturer to whom the sales are made is taxable under section 2-b (sec. 10107) of this act and the gross proceeds from such sales shall be taxable at the wholesale rate. Provided, however, that such sales may be classed as wholesale sales only if evidenced by proper and adequate invoices and records."

Taylor Machine Works is a Mississippi corporation and manufacturers in this state a machine called "Logger's

Dream," a description of which may be found in the former opinion of this Court.

The question for decision is whether the wholesale rate of one-eighth of one percent or whether the retail rate of two percent should have been paid by appellee as sales tax on its sales during the years of 1944, 1945 and 1946 of this machine, called "Logger's Dream." It paid on the wholesale rate.

The question, therefore, is whether the "Logger's Dream" is an "exclusive necessity" to the processing of lumber in this state. Whatever its secondary purposes may be, it is clear that the primary use or purpose of the "Logger's Dream" is to assemble scattered logs into piles or placing them on trucks, tram cars, etc., for transport to sawmills. As a secondary use it may be used for lifting heavy articles, such as mired down, overturned or ditched automobiles or trucks, but such use would be the unusual and not the primary use for which the machine is intended, as indicated by its name "Logger's Dream."

Most every article in daily use can be and is at intervals used for other than its primary purpose for which it was intended to be used. We think of a hat, and there comes to mind its primary use as a shaped covering for the head, but hats are sometimes used for other purposes. Section 970, Code of 1942, in providing the manner in which shares in the partition of lands shall be allotted, provides that the commissioners shall publicly number as many tickets as there are shares to be allotted and put the tickets into a "hat" and allot the shares by drawing. Hats are frequently passed in assemblies for taking up collections or ballots. But still the primary use of the hat is as a covering for the head and the primary use or the "Logger's Dream" is for the collection and loading of logs onto trucks or cars for transport to a sawmill.

The gathering and loading of logs for transport to the sawmill is a necessary and essential step in their processing into lumber. The getting of the logs to the mill is a sine qua non to their processing into lumber. Hence

the gathering of the logs, after felling, and the loading of the logs on trucks or cars for transport to the sawmill is a necessary operation for and a part of their manufacture into lumber. It is just as vital to the act of processing as is the power that operates the mill.

It is true that logs may be and generally are gathered and loaded on cars or trucks by instrumentalities other than the "Logger's Dream", but whatever the instrumentality used may be, that instrumentality is a necessity "to processing" within the state for it is performing a necessary step in the process of manufacturing, and when that is the constant and only recurring use made of such instrumentality then its use is exclusively for processing within the state.

It has been the public policy of this state for several years to encourage industry within the state. This is illustrated by the passage of the B. A. W. I. bill and the consequent encouragement to industry to set up factories within the state. It was the purpose of the Legislature, in the enactment of the statute here under review, to stimulate, in the state, the process of manufacture. The term "exclusive," as used in the act, was not intended to modify or limit "necessities," but the Legislature intended that "exclusive" should modify the words "to processing" within the state. The purpose and intent of the Legislature evidently was that a sale of machinery, machine parts and supplies that were "necessities" to processing within the state and whose primary usefulness was "exclusive" to processing "within the state" should "be construed wholesale sales," upon compliance with the other terms of the statute. In this way, industries engaged in processing within the state would be given the benefit of the lower wholesale rate on "necessities" "exclusive" "to processing" within the state. Such industries pay sales taxes on their manufactured products, pay ad valorem taxes on their properties, and their payrolls stimulate commerce and trade in the state.

It is evident therefore that the Legislature intended by the words "machinery, machine parts, and supplies which are exclusive necessities to processing" to classify as taking the wholesale sales tax rate any "machinery, machine parts, and supplies" whose primary use performs a necessary step in the operation of processing in the state, and whose actual use is exclusively in the operation of processing in the state. Any such tangible personal properties are "exclusive necessities to processing" in the state and take the wholesale rate. ██ ██ The "Logger's Dream" meets these requirements and is an exclusive necessity to processing within the state, and when sold in full compliance with the terms of the aforesaid statute its sale shall be taxed at the wholesale rate.

Three of the members of this Court are of the opinion that the suggestion of error should be sustained, which under our rules of procedure results in the affirmance of the judgment of the trial court.

Suggestion of error sustained and judgment affirmed.

CONCURRING OPINION.

**Griffith, C. J.** (concurring).

In voting to sustain the suggestion of error I do so in adherence to the dissenting opinion which is among the original opinions handed down on June 14, 1948. Therein mention was made of the ruling by the Tax Commission that a Diesel engine is to be given the lower classification. In the record in this case the following statement appears as having been made by the trial judge:

"The able and distinguished attorney for the State Tax Commission who has made a brilliant argument in' this case, admits that Diesel motors are not taxed by the State Tax Commission because of a Commission holding that they are an exclusive necessity in the manufacture of lumber."

This statement was and is unchallenged by any method by which under the law such a statement may be challenged or corrected. A pertinent statement made by a trial judge must be accepted by us as true so long as it remains in and as a part of the record. National Box Co. v. Bradley, 171 Miss. 15, 16, 30, 154 So. 724, 157 So. 91, 95 A. L. R. 1500, and cases there cited.

The only basis for now saying that the statement by the trial judge was not in fact correct is upon assertions made in the Chairman's brief on the suggestion of error, but we have repeatedly held that in deciding cases we must act on the record (of which a statement of fact by the trial judge is a part) "not by assertions of fact made in briefs or suggestions of error, however sincere counsel may be in those assertions." Alexander v. Hancock, 174 Miss. 482, 498, 164 So. 772, 165 So. 126. See also Rayl v. Thurman, 156 Miss. 8, 14, 125 So. 912; McLendon v. Ravesies, 178 Miss. 428, 433, 173 So. 303.

**Smith, J.**, concurs in the above opinion.

DISSENTING OPINION.

**Roberds, J.** (dissenting).

The question for decision here is clear and simple. Is it shown that "Logger's Dream" is an exclusive necessity for moving logs from the woods to sawmills where the logs are cut into lumber? The answer, under the proof in this record, is as clear and simple as the question. The use of this machine could not be an exclusive necessity for that purpose for these reasons:

First, the device had been in existence only three or four years when the case was tried. Patent had been applied for but not granted. During all the years in the past, since the use of sawmills began, other methods had been used for moving the logs to the mills.

Second, the cost of this machine is prohibitive to small sawmill operators. It sells for some twenty-eight hun-

dred dollars. Hundreds of small operators could not afford to pay such a price.

Third, the proof shows that when the case was tried there were some seven thousand sawmills being operated in Mississippi. Approximately eight hundred of these devices had been sold. Part of these were sold out of this State. It is not shown how many had been sold in Mississippi. But even if all eight hundred had been sold in this State, less than one out of seven mills was using the "Logger's Dream."

Many methods are used to get logs from the woods to sawmills—skidders, tram cars operated on dummy rail lines, caterpillar and other tractors to drag or haul them, snaking them by horse or motor power.

How, then, can it be said, as a simple matter of reason and logic, that "Logger's Dream" is the exclusive method necessary for doing that? A dozen other methods are used. The use of this device is not a necessary method—much less an exclusive necessity.

The controlling opinion now being handed down lays much stress upon the assumption that this machine was being used exclusively to move logs to mills, whereas it could have been used for a number of other purposes. With great deference to my brethren who have adopted the controlling opinion, they have the spade by the wrong end of the handle. They have permitted themselves to run off on a tangent to the real issue in the case. The question is not whether the device is being used exclusively to move logs but whether its use is an exclusive necessity for that purpose. If exclusive use is the test, then the owner may exempt all trucks, trains, or other devices from the applicable tax, by simply showing that they are being used only to move logs, although they be just as suitable, or more so, for doing numerous other things, and although there are dozens of other devices better adapted to moving logs, and are actually being used for that purpose.

The trial judge, and the Members of this Court joining in the original dissenting opinion, apparently grounded their conclusions mainly upon the assumption that the State Tax Commissioner had ruled that Diesel engines, furnishing motive power, came within the statute here involved. There is no proof whatever in the record that such is the fact, and it has developed on the Suggestion of Error that no such ruling has ever been made, and no such exemption has been allowed by the State Tax Commissioner. The present controlling opinion has abandoned that assumption. It makes no mention of it. Thus, in my humble judgment, .the only plausible reason in support of the former dissenting opinion and the now controlling opinion has entirely disappeared. It was a collateral matter in the first place. It is now shown the assumed fact never existed. The foundation having fallen, it would seem that the superstructure builded thereon should fall also.

**Alexander** and **McGehee, JJ.**, join in this dissent.